WRIGHT v. FITZGIBBONS.

(In Banc. April 9, 1945. Suggestion of Error Overruled May 14, 1945.)

[21 So. (2d) 709. No. 35826.]

**John T. Smith, W. D. Jones,** and **Henry M. Hezel,** all of Cleveland, for appellant.

474

Creekmore & Creekmore, of Jackson, for appellee.

Argued orally by **Rufus Creekmore**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

Mrs. Fitzgibbons filed a petition in compliance with Section 1269, Code 1942, for the adoption of a child of which Mrs. Wright was the mother. Mrs. Wright appeared, filed an answer objecting to the adoption and a cross-petition praying that the custody of the child be awarded to her by a writ of habeas corpus. The appellee's petition alleged that the appellant had consented to this adoption and also that she had abandoned the child. After hearing the evidence, both for and against the adoption of the child, the court rendered a decree reciting that the child, which was then about five and a half years old, had been "abandoned by the defendant when about three weeks of age," that it was for the best interest of the child to be adopted by the petitioner, granted the appellee's petition for the adoption of the child and dismissed the preliminary writ of habeas corpus that had previously been granted to the appellant. The appellant having appeared and objected to the adoption of her child, her consent thereto theretofore given for its adoption, as will hereinafter appear, became ineffective and in order for the decree of the court below to be sustained it must appear that it was warranted in finding

from the evidence that the child had been abandoned by the appellant. Section 1269, Code 1942.

It appears from the evidence without conflict that in July, 1938, the appellant, then seventeen years of age and unmarried, became an expectant mother and entered a Salvation Army Home for Unmarried Mothers for the purpose of giving birth to the expected child. At the suggestion of a sister of the appellant the appellee agreed to take and care for the child. This she communicated to the appellant, who thereupon wrote her a letter saying, among other things, "Odie, you said you wanted the baby, well you can have it, but I will take it to Jax to you and you will have to go there and get it." After then requesting the appellee to send her clothing, "a bottle and a thermos bottle and nipple" for the expected baby, she said, "Odie, please don't tell anybody about me." On July 27th, after the birth of the child, a girl, she again wrote the appellee, saying, among other things, "I finally made up my mind you can have my baby, I hate to do it but I know it is best for me and it too." After stating that she had no job and nothing to look forward to, she said, "Odie, you have not told anyone have you?" The Salvation Army Home was at Tampa, Florida, and pursuant to a request from the appellant in a letter written August 2, 1938, the appellee went to Tampa and brought the appellant and her baby to the appellee's home in Daytona, Florida, at which place the appellant's grandfather also lived. On August 23rd the appellee, who was then the wife of Oscar S. Eastman, and the appellant entered into a written agreement, which the Reporter will set out in full,[1] by which the appellant agreed that the

---

[1]"Agreement.

"This Agreement, Made and entered into this 23rd day of August, A. D. 1938, by and between Oscar S. Eastman and his wife, Odie Eastman of Daytona Beach, Florida, and Stella Mae Brown, single, of Jacksonville, Florida, witnesseth:

appellee and her then husband should "have the full and absolute care, custody and control and education of the said child," and that the appellant "consents and agrees to any adoption proceedings hereafter to be instituted by the said Eastmans and agrees to in no way hinder, or assert or attempt to assert any control or authority over the said child from and after this day."

From this point on the evidence is in conflict. But from the evidence introduced by the appellee, which the court below had the right to, and evidently did, believe, it appears that the appellant concealed the fact that the child was hers, enjoined on the appellee to so do, and exercised no sort of control over the child, contributed nothing to, and exhibited little, if any, interest in, its welfare until just prior to the institution of this adoption proceeding, when she notified the appellee that she wanted the child back.

"Abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all pa-

---

"Whereas, there was born to the said Stella Mae Brown on the 16th of July, 1938, a daughter, who has been named Sandra G., said child being born out of wedlock and its Mother being unable financially and otherwise to properly care for the said child, and desiring that it shall have a good home and the proper care and education, therefore, it is agreed by and between the parties hereto that the said Oscar S. Eastman and his wife, Odie Eastman, shall have the full and absolute care, custody and control and education of the said child from and after this day and they hereby agree in consideration thereof, to properly support and care for the said child and to educate her to their fullest ability and it is further agreed by the said Stella Mae Brown that in consideration thereof, she hereby consents and agrees to any adoption proceedings hereinafter to be instituted by the said Eastmans and agrees to in no way hinder or assert, or attempt to assert any control or authority over the said child from and after this day.

"In Witness Whereof, the parties hereto have affixed their signatures the day and year first above written.

"Oscar S. Eastman·
"Odie Eastman
"Stella Mae Brown"

rental duties and relinquish all parental claims to the child.'' 1 Am. Jur., Adoption of Children, Sec. 42; Amis on Divorce and Separation, Section 216. If this evidence does not bring this case within that rule, it would be hard to conceive what evidence would do so. Consequently, the court below committed no error in holding that she had abandoned the child. The appellant is now happily married and lives in Cincinnati, where she and her husband together earn about $500 per month. It may be that she has repented of her former conduct and desires to resume her parental rights over the child, and we are not prepared to say that this can not in a proper case be done, ''but when abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated, or can be, consistently with the welfare of the child.'' 1 Am. Jur., Adoption of Children, Sec. 42. This question was primarily for the decision of the court below and we are unable to perceive that it committed any error in reaching the decision it did.

Mrs. Eastman and her former husband, Oscar S. Eastman, have been divorced and she is now the wife of V. G. Fitzgibbons, who did not join in the petition for the adoption of the child. The decree here rendered, however, recites ''that the said minor Marie Louise Brown be and she hereby is adopted to the petitioner Odie Eastman Fitzgibbons and V. G. Fitzgibbons, her husband,'' etc. Her husband should not have been included in this decree and as to him it is binding on no one, but the appellee says that if it was error to include him therein this Court may nevertheless eliminate him therefrom and then affirm the decree. But, as counsel for the appellant say, the court below may have been influenced in rendering its decree by the fact that it was giving the child not alone to Mrs. Fitzgibbons but to her husband also, without which it may not have denied the appellant her parental rights over the child. She herself had testified that she was influenced in giving the child to Mr. and Mrs. Eastman by the fact that she had confidence in Mr. Eastman and was

willing to trust the child's welfare to him. For this error in the decree, and for this alone, it will be reversed and the cause remanded.

Reversed and remanded.

### On Suggestion of Error.

**Alexander, J.,** delivered the opinion of the Court on suggestion of error.

The suggestion of error filed by appellees invites attention to the probable effect of our reversal of the cause upon that part of the chancellor's decree which quashed the writ of habeas corpus granted under the prayer of appellant's cross-bill. Our former opinion distinctly stated that the cause was reversed upon the ground that the adoption was decreed to appellee and her husband, whereas the former alone was a party to the proceeding, and that it was "for this error in the decree, and for this alone" that it was reversed.

The entire decree was reversed, yet final disposition of the writ of habeas corpus is left to abide the event of the hearing upon remand.

Overruled.