SCHILLEREFF et ux. *v.* ADAMANY

No. 41693          February 13, 1961          127 So. 2d 392

*Robert H. Oswald,* Pascagoula, for appellants.

*Colmer, Megehee & Colmer,* Pascagoula, for appellee.

LEE, P. J.

This proceeding was filed by Mr. and Mrs. Ralph H. Schillereff on August 14, 1959, for the purpose of adopting Linda Ann Seal, a girl, about five years of age. The father, Billy Seal, consented thereto. Mrs. Peggy Baker Seal Adamany, the mother, would not consent, but instead answered, made her answer a cross-bill, and prayed that custody of the child should be awarded to her.

The background of this controversy was as follows: The Seals were married April 21, 1950. There were three children of this union. Linda Ann, the youngest, was born August 27, 1955. The couple was divorced in

December 1955. The custody of Linda was awarded to the mother while the custody of the other two was awarded to the father.

Subsequent to the divorce and early in 1956, the mother obtained employment in the City of New Orleans and procured her own mother to take care of Linda Ann. It was not denied that the mother contracted an adulterous relation with a man in New Orleans, and after a time, she consented for the father to have custody of the child. He, in turn, entrusted her to the care of Mrs. Schillereff, his sister.

In November 1956, the mother went to Brownsville, Texas, where she worked at a hotel for about three weeks. She married Maurice Voltazzio in December of that year, but the marriage lasted for only about six weeks. Following a divorce in January 1957, she subsequently married her present husband, Joseph L. Adamany, on July 8, 1957.

Since Mrs. Adamany, the mother, appeared and objected to the adoption, the cause is governed by Sec. 1269-09, Code of 1942, Rec., which is as follows: "But no infant shall be adopted to any person if either parent, after having been summoned to sign the petition for adoption, shall appear and object thereto before the making of a decree for adoption, unless it shall be made to appear to the court from evidence touching such matters that the parent so objecting *had abandoned or deserted such infant or is mentally, or morally, or otherwise unfit to rear and train it,* in either of which cases the adoption may be decreed notwithstanding the objection of such parent, first considering the welfare of the child, or children, sought to be adopted." (Emphasis supplied.)

Two issues were presented, namely: (1) Whether the mother was "morally, or otherwise unfit to rear and train" the child; and (2) whether she "had abandoned or deserted" the child.

The evidence for the mother was to the effect that, while her conduct in 1956 was inexcusable, at least after her marriage to Adamany, her conduct and deportment had been excellent. Depositions from several reputedly responsible citizens in the community where she had lived for the past three and one-half years gave corroboration to her good conduct over that period. There was, in fact, no substantial evidence to the contrary for that period except the statement of her former husband, Billy Seal, that, in June and July 1958, when he and Mrs. Adamany were giving consideration to a possible return to their original married status, he stayed with her in a motel on three different nights. Mrs. Adamany positively and emphatically denied that this occurred.

In A Brief on Divorce and Separation in Mississippi by Amis at Sec. 214, p. 289, the author, in discussing when conduct rendered a parent unsuitable to have the custody of a child, said: "But the actual present character, conduct and associations, as well as the reasonable probabilities for the future should control. Because since the good of the child is the chief concern of the court, no award will be made to one party merely as a reward for former virtuous conduct, nor denied to the other as a punishment for past misdeeds. For it sometimes happens that one who, under the lure of strong temptation, has grievously sinned, has yet repented and reformed and would train a child, as wisely and well as if no such transgression had ever occurred."

It was conceded that the mother sent inexpensive gifts to Linda Ann at Christmas and on birthdays. Mrs. Adamany testified that she had sent clothing also. Besides she testified that she called frequently over the telephone to find out how Linda Ann and the other children were getting along. The evidence to the contrary was that, while she did make some calls, they were only occasional. It was clear that she did visit several times in the home of the Schillereffs to see about

her daughter. Besides she was adamant in her refusal to comply with the solicitations of the Schillereffs that she consent to the adoption.

The evidence showed that the Schillereffs had given excellent care and attention to the child. It also appeared that Joseph L. Adamany, who wishes to see his wife get custody of Linda Ann, is a substantial citizen with an income of $8,000 to $10,000 a year.

The case of Wright v. Fitzgibbons, 198 Miss. 471, 21 So. 2d 709 is cited by the appellants. In that case, the adoption of the five year old child was granted on the ground of abandonment in spite of the objection of the mother. That case was much stronger on the facts than the present case. Added to the stronger factual situation, the trial court also found as a fact that there had been an abandonment. In the present case, the chancellor held that the petitioners had failed to meet the burden in both respects, that is, to show that the mother was then of such moral characer that the custody of the child should be kept from her on that account, or to show that she had abandoned the child.

After hearing the matter for two days in January 1960, in a somewhat elaborately written opinion, the chancellor resolved the two issues in favor of the mother, denied the adoption, and restored custody to the mother.

This is a hard case, and the opinion of the chancellor indicates that the matter had troubled him considerably. But the trial judge saw the witnesses and observed their demeanor as they testified. He was in a better position to determine the worth, weight and credibility of the evidence, pro and con, than this Court, which can look only at the typewritten pages. There was substantial evidence to support the finding and decree. At all events, this Court cannot say that the result reached was manifestly wrong.

Consequently the decree of the trial court must be affirmed.

Affirmed.

*Kyle, Arrington, Ethridge* and *Rodgers, JJ.,* concur.