341 So.2d 108 (1977)
In the Matter of Shellye Deneen YARBER and David Anthony Yarber, minors.
Alton YARBER
v.
Robert W. DEARMAN et ux.
No. 49056.
Supreme Court of Mississippi.
January 5, 1977.
Stanford Young, Waynesboro, for appellant.
Peter K. Smith, Quitman, for appellees.
Before PATTERSON, SMITH and LEE, JJ.
LEE, Justice:
The Chancery Court of Clarke County entered a decree granting adoption of Shellye Deneen Yarber and David Anthony Yarber, children of the former marriage of Frances L. Dearman and Alton Yarber, to Robert W. Dearman, their stepfather, and Yarber appeals to this Court. We reverse.
Appellees, Robert W. Dearman and Frances L. Dearman, filed their petition for adoption without stating a ground therefor, and subsequently amended the petition, averring that appellant failed to pay support as ordered by the court and failed to make attempts to see the children under the reasonable visitation privileges of the divorce decree granted to Mrs. Dearman. A demurrer was sustained to the amended petition, and a second amended petition was filed, which followed the language of the statute, charging (1) abandonment of the children by appellant, and (2) that appellant is mentally, morally and otherwise unfit to rear or train the children, for the reason that on October 11, 1974, appellant drove to the Dearman home with the intent of killing Robert W. Dearman, and shot Dearman four times.
The evidence shows that appellant did not perform the provisions of the divorce decree in contributing financial support to his children, although he sporadically paid small amounts of support, and from March 10, 1972, through December 4, 1973, sent twenty-three (23) support checks to Mrs. *109 Dearman in addition to sums paid through the Welfare Department. He visited the children about once every six months, called them on the telephone at infrequent intervals, and sent them Christmas presents.
On October 11, 1974, while the petition for adoption was pending, appellant called his former wife and requested permission to visit with the children. She told him that he could pick up the children about 10:30 p.m. after a ballgame. She testified that he used abusive language toward her. About 10:30 p.m. appellant drove to the Dearmans' home, Mr. Dearman came out to appellant's vehicle, an argument ensued, and appellant shot Dearman four times with a .25 caliber pistol. Although Dearman was hospitalized for ten days, he made a complete recovery.
Mississippi Code Annotated § 93-17-7 (1972) provides:
"No infant shall be adopted to any person if either parent, after having been summoned to sign the petition for adoption, shall appear and object thereto before the making of a decree for adoption, unless it shall be made to appear to the court from evidence touching such matters that the parent so objecting had abandoned or deserted such infant or is mentally, or morally, or otherwise unfit to rear and train it, in either of which cases the adoption may be decreed notwithstanding the objection of such parent, first considering the welfare of the child, or children, sought to be adopted. Provided, however, the parents shall not be summoned in the adoption proceedings nor have the right to object thereto if, within one year prior to the adoption proceedings, the parental rights of the parent or parents have been terminated by the procedure set forth in sections 93-15-1 to 93-15-11, Mississippi Code of 1972, and such termination shall be res judicata on the question of parental abandonment or unfitness in the adoption proceedings." (Emphasis supplied).
This Court has held that abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child. In Re Hall, 202 So.2d 641 (Miss. 1967); Wright v. Fitzgibbons, 198 Miss. 471, 21 So.2d 709 (1945).
In Ford v. Litton, 211 So.2d 871 (Miss. 1968), the lower court held the father was not unfit, but that he had abandoned the child, and this Court said:
"In an adoption proceeding, on the threshold, the court is met with the presumption that the child's parents will love him most and care for him best, and that, ordinarily, it would be for the best interests of the child that he remain in the custody of his parents. In all contests between a parent and other persons, this presumption is conclusive unless it be clearly shown that by reason of immoral conduct or vicious habits the parent is an unsuitable person to have the custody, or has forfeited the right to custody by reason of having abandoned the child, or other circumstances which clearly indicate that the best interests of the child will be served in the custody of another. Bunkley & Morse, Amis on Divorce and Separation in Mississippi, § 8.01 (1957). This Court has consistently followed this rule and has not found abandonment unless it has been clearly proved. See Schillereff v. Adamany, 240 Miss. 275, 127 So.2d 392 (1961); Mayfield v. Braund, 217 Miss. 514, 64 So.2d 713, 65 So.2d 235 (1953); Hibbette v. Baines, 78 Miss. 695, 29 So. 80, 51 L.R.A. 839 (1900)." 211 So.2d at 873-874.
The chancellor held the appellant exhibited a callous indifference to the welfare of his children in contributing only paltry amounts of support to them and in visiting them only sporadically, but he did not find that appellant had abandoned his children. The statute makes abandonment the ground for adoption, not callous indifference.
The chancellor found, in granting the adoption, that:
"[T]he father by his actions of failing to properly care for and support his children in every way and his conduct overall and especially in regard to the October 11th *110 incident, clearly convinces this Court that he is unfit and should be denied the privileges of a father, and it is for this reason that this Court feels that the adoption should be granted. I see no possibility of any relationship being re-established between the father and his children, especially the ten year old, who witnessed the October 11th incident."
Appellees cite the case of Shoemake v. Davis, 216 So.2d 420 (Miss. 1968), where the natural father admitted he murdered the children's mother, buried her body underneath an outdoor toilet and utilized and permitted his children and parents to use the toilet. The Court held that such conduct evidenced depravity and moral unfitness contemplated by the statute.
In Mayfield v. Braund, 217 Miss. 514, 64 So.2d 713 (1953), the lower court held the father to be morally unfit and that he had abandoned and deserted his children because he had been sentenced to ten years in the penitentiary. This Court reversed the adoption decree noting that the appellant there had made a model prisoner and had become rehabilitated.
This case involves an adoption of children and does not involve a question of their custody and does not affect their custody, unless the adoption decree were permitted to stand. In passing upon the adoption of the children, the Court must first determine that one of the grounds for adoption exists, (1) abandonment or (2) moral or otherwise unfitness, and then what is for the best interest of the children. The averment in the second amended petition sets forth that appellant is unfit because of the October 11 shooting, and the chancellor principally found that appellant is unfit because of that incident. While the entire situation existing between the Dearmans and appellant and the children is a regrettable one, the chancellor was manifestly wrong in holding that appellant is morally or otherwise unfit to rear and train his children and that they should be taken from him, their names changed, and rights and privileges between them extinguished. The Court has the power, in the original divorce action, to enforce the payment of support and to determine what is best for the children insofar as their custody is concerned.
Even though Dearman loves the children, provides for them and is willing and anxious to educate them, and can and will provide finer things for them, this, in itself, does not justify the taking of the children from their natural father. If a person could adopt a child from his natural parents because the person could better provide for him, give him things he needed and wanted, educate him and provide a fine home for him, then many people in the so-called underprivileged group could have their children taken away from them because it could be said their best interest was promoted by doing so.
JUDGMENT REVERSED AND DECREE OF ADOPTION AND CHANGE OF NAME SET ASIDE AND CANCELLED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.