452 So.2d 837 (1984)
In re ENLARGEMENT OF the BOUNDARIES OF YAZOO CITY, Mississippi, Dynamics Corporation of America, Portable Elevator Division, Amco Products, Yazoo City, et al.
v.
CITY OF YAZOO CITY, Mississippi.
No. 54956.
Supreme Court of Mississippi.
May 16, 1984.
Rehearing Denied July 25, 1984.
Herman B. DeCell, Henry, Barbour & DeCell, Yazoo City, Elizabeth L. Gilchrist, Jackson, for appellants.
T.H. Campbell, III, Campbell & Campbell, Yazoo City, for appellee.
Before ROY NOBLE LEE, BOWLING and ROBERTSON, JJ.
*838 BOWLING, Justice, for the Court:
This appeal involves the expansion of the city limits of Yazoo City, Mississippi. After a full hearing on February 25, 1983, the Special Chancellor rendered his opinion approving the action of the Mayor and Aldermen of the City annexing certain areas adjacent to the existing city limits.
Pursuant to the petition for annexation filed by the City government on August 24, 1981, the City sought annexation of four separate areas. The property owners of three of the annexed areas did not participate in the appeal. Protestants from the fourth area, (hereinafter referred to as Area IV), consisting of ten commercial enterprises, appeal from the decision of the Special Chancellor and allege the following assignments of error:
I. THE CHANCELLOR'S FINDINGS OF FACT ARE MANIFESTLY AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND ARE NOT SUPPORTED BY ANY SUBSTANTIAL EVIDENCE.
II. THE CHANCELLOR'S CONCLUSIONS OF LAW THAT THE PROPOSED ANNEXATION IS REASONABLE AND IS REQUIRED BY THE PUBLIC CONVENIENCE AND NECESSITY ARE ERRONEOUS.
III. THE CHANCELLOR ERRED IN FINDING THAT THE CITY'S LEGAL DESCRIPTION OF THE TERRITORY PROPOSED TO BE ANNEXED AS SET FORTH IN THE ORDINANCE, PUBLIC NOTICE AND CHANCERY COURT PETITION CONSTITUTED A VALID, LEGAL DESCRIPTION.
IV. THE CHANCELLOR ERRED IN FAILING TO FIND THAT THERE WAS A FATAL VARIANCE BETWEEN (A) THE LEGAL DESCRIPTION CONTAINED IN THE CITY'S PETITION AND ORDINANCE: AND (B) THE LEGAL DESCRIPTION AS PLATTED ON THE CITY PLAT ANNEXED TO THE PETITION AS REQUIRED BY SECTION 21-1-25, MISSISSIPPI CODE OF 1972, AS AMENDED.
The other appellants in the cause are objectors to the annexation ordinance, the majority being residents of an area immediately outside the existing city limits known as the Shady Lane/Shady Oaks area. It was contended by persons alleging to represent all the residents of this area that the annexation ordinance was void as that area was not included as the annexed area. These appellants submit the following assignments of error:
I. THE SPECIAL CHANCELLOR ERRED IN FINDING THAT THE PROPOSED ANNEXATION DID NOT VIOLATE THE 14TH AND 15TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND WAS NOT THEREFORE UNREASONABLE EVEN THOUGH THE SHADY LANE/SHADY OAKS AREA WAS EXCLUDED FROM THAT ANNEXATION SOLELY BECAUSE ALL THE AREA'S RESIDENTS ARE BLACK.
II. THE SPECIAL CHANCELLOR ERRED IN FINDING THE PROPOSED ANNEXATION REASONABLE, AND IN FURTHER FINDING THAT THE BOARD OF ALDERMEN OF THE CITY OF YAZOO CITY DID NOT EXCLUDE THE SHADY LANE/SHADY OAKS AREA FROM THE PROPOSED ANNEXATION FOR RACIALLY DISCRIMINATORY REASONS AND WITH RACIAL DISCRIMINATORY EFFECT.
We carefully have studied the record, the briefs, and consideration has been given the oral arguments. A citation of authorities is not necessary on the legal proposition that this Court cannot overturn the decree of a chancellor unless we find with reasonable certainty that his decree is manifestly wrong on a question of law or the interpretation of the facts pertaining to legal questions. We find without hesitation that the opinion of the special chancellor is not manifestly erroneous. It sets out a detailed analysis of the cause and his resulting decree. We therefore affirm that action of the chancellor and adopt the opinion as the opinion of this Court. For the purpose of being accurate, we now set out *839 that opinion in its full context as a part of this appeal opinion:
"At a regular meeting of the Board of Mayor and Aldermen of the City of Yazoo City, Mississippi, held on August 24, 1981, an ordinance was duly enacted extending and enlarging the corporate limits of the city. The said ordinance was published according to law.
"On September 22, 1981, the City filed its petition in this Court for ratification, approval and confirmation of the ordinance. A certified copy of the ordinance, together with the requisite map, was attached to the petition. The ordinance defines with certainty the territory proposed to be included in the corporate limits, and also defines the entire boundary as changed.
"In accord with the terms and provisions of Sec. 21-1-27, Miss.Code, 1972, the ordinance in general terms described the proposed improvements to be made in the territory proposed for annexation, the manner and extent of such improvements, and the approximate time within which such improvements are to be made. It is stated that the City shall make the following improvements in the territory proposed for annexation within a reasonable time, not to exceed three (3) years from the effective date of the ordinance:
"(a) To provide and extend an adequate water system for domestic use and fire protection;
"(b) To construct sanitary sewer lines and to provide sanitary sewage facilities;
"(c) To provide electrical system and service where needed and permitted.
"The ordinance further sets out a statement of the municipal or public services which the City proposed to render in the annexed territory, to-wit:
"(a) Provide garbage and trash pickup from each residence;
"(b) Provide regular city water rates to users already served by city water;
"(c) Provide regular police patrol and protection;
"(d) Provide fire protection;
"(e) Provide street and drainage maintenance;
"(f) Provide malarial control, animal control, and traffic control and regulatory traffic signs;
"(g) Provide comprehensive zoning for building construction, building codes and building inspector services and regulations;
"(h) Provide garbage pickup from each commercial establishment on a fee basis.
"On September 22, 1981, this Court entered an Order fixing the date for hearing the said petition, that is to say, October 28, 1981. Thereupon, notice to all persons interested in, affected by, having objections to, or being aggrieved by the ordinance was given by publication, according to law. Further, notice by posting was given in the manner prescribed by Statute.
"The Court finds that the ordinance and the Petition for ratification, approval and confirmation thereof are in accord with the provisions of the statutes in such cases made and provided.
"Of the estimated 1,235 people living in the territory sought for annexation, some forty (40) individuals signed the objections filed in this cause. Some nine (9) industries likewise filed objections. In addition thereto some seventy (70) individuals who live outside the territory sought to be annexed filed objections.
"After hearing motions and other preliminary matters, hearing on the merits began on October 13, 1982. The taking of testimony was concluded on October 22, 1982. This matter was taken under advisement to afford the Court time to review the testimony.
"The burden of proof was on the municipal authorities to show that the proposed enlargement is reasonable, Sec. 21-1-33, Miss.Code 1972; Re Extension of Boundaries of the City of Indianola, 226 Miss. 760, 85 So.2d 212 (1956); Bridges v. Bilox [Biloxi] 253 Miss. 812, 178 So.2d 683 (1965).
"In a proceeding under Sec. 21-1-33 the Chancery Court is governed entirely by, and its powers are limited to, the language *840 of the statute. It is empowered (1) to approve, ratify and confirm the ordinance if found to be reasonable, (2) to modify the proposed enlargement or contraction by decreasing the territory to be included or excluded, or (3) to deny in toto the proposed enlargement or contraction if found to be unreasonable. Lippian v. Ros, 253 Miss. 325, 175 So.2d 138 (1965).
"Briefs by the four groups involved in this cause were presented on or about November 12, 1982.
"The maps, charts, and other exhibits, as well as the oral testimony show the following:

"AREA NO. I
"This area contains 181 acres and is situated to the West of the present City. It adjoins Yazoo City along Champlin Avenue and Airport Road. Yazoo City High School is situated on this tract. The tract also contains some vacant developable land. No one lives in this area. The County pays $375.27 for each child in the County that attends the City School. The City will save some $12,000 on fire insurance by extending the City limits. Area I is reasonably in the path of growth of the City and the Court is of the opinion that the annexation of this parcel would be reasonable.

"AREA NO. II
"Area 2 has four (4) inhabitants. It is situated at the Northeast corner of the present city and contains 674.2 acres. It adjoins the City along some two miles of the present boundary. Mississippi Chemical Company headquarters building and the Yazoo Country Club are located thereon, as well as the intersection of Highway 49 West and Highway 3. There was no objection to the annexation of this parcel. The Court finds that the annexation of this parcel to be reasonable.

"AREA NO. III
"Area 3 is located to the South and East of the present City. It contains 805.9 acres. It is made up of commercial buildings, a cemetary, and homes. A Boy Scout Camp is also located therein. Some 721 people live in this Area. The City serves this Area with water and electricity but no sewer facilities are provided. The City also provides fire protection for Area 3 and the people living therein pay for this service. This Area includes the intersection of Highway 49E, Highway 49W, and Highway 16, and is a main highway entrance to down-town Yazoo City. There is a motel and two restaurants situated at or near the intersection of said highways.
"The State Board of Health's County Sanitarian for Yazoo County testified that there was a serious health hazard behind the motel with reference to the sewage. He stated that he had received many complaints of open sewer in Area 3 and that he had written letters to some twenty (20) people in this Area. One restaurant, he said, dumps sewage in the creek and causes a serious health hazard. Some sewage from the Enchanted Hills Area drains into Willis Creek.
"Although it is true that there has been little change in Area 3 over the past ten years, it is also true that this Area lies at or near a major entrance to Yazoo City and it can be reasonably anticipated that this land will become a part of the City within a reasonable time and that it should be taken into the City so as it might be developed properly, particularly with reference to the development of streets and the collection and disposal of sewage and waste rather than to allow the Area to continue to be developed in an uncontrolled manner. This Court is, therefore, of the opinion that the annexation of Area 3 would be reasonable.

"AREA NO. IV.
"Area 4 is located to the South and West of the present City. This Area contains a residential area known as the Jonestown Community and the Yazoo Industrial Park with related industrial and commercial development. The Area includes the Highway 49 West and Highway 3 intersection and contains some 1,226 acres. There are 538 residents in the Area. Jonestown is an *841 old residential area. Some 25 open sewer violations were found to exist therein by the County Sanitarian for Yazoo County. City services for electric power and water already exist in the Jonestown area. There is a need for both fire and police services in the area. The testimony reveals that the persons therein will enjoy a reduction in their fire insurance rates. There is likewise a need for permits as to further building or repairs in the Area. This Court is of the opinion that the annexation of the Jonestown Community, being a part of Parcel 4, is reasonable.
"The Industrial Park area lies East of the Yazoo River and West of the Jonestown Community and along Highway 3. There are no homes situated in this parcel. The objectors from the Industrial Park area testified that there was very little land left in the park for development; that they did not need or want the alleged improvements offered by the City. They purchase water and sewer service from the City at double rates. They also receive their electric power from the City. Some of the industries have their own fire fighting equipment. There is no serious health hazard in this Area and the crime problem is very low. Several of the owners of these industries and a number of their employees live in Yazoo City.
"In the case of Texas Gas Trasnmission [Transmission] Corp. v. City of Greenville, 242 So.2d 686, the objectors offered testimony to show that they did not want any of the alleged improvements offered by the City. Their gas lines were already on the property. They had their own lights and water well, their own firefighting equipment and septic tank, and would have to pay taxes to the City of Greenville if the City expanded in their direction. The Supreme Court of Mississippi found this argument not well taken because the Appellant already uses the water and light service as a "standby for emergency purposes". It uses other facilities and its employees use various City services. The Court also found that the argument that the appellant would not receive benefits commensurate to its increased tax burden was not well taken. See Kennedy v. City of Kosciusko [203 Miss. 4], 33 So.2d 285.
"In addition, Area 4, as above stated, includes the intersection of two major highways, to-wit: Highway 49 West and Highway 3. The control of growth around this entrance to the City would be reasonable.
"This Court is of the opinion that the annexation of parcel 4 would be reasonable.
"The objections of defendants Zellner Streeter, et al., is a contention that the proposed annexation is unreasonable and unjustified in that it deliberately excludes the area known as Shady Lane/Shady Oaks Subdivision for racially discriminatory reasons. The evidence shows that the Mayor and Aldermen reduced the area to be annexed in order to reduce the number of white population to be included so that they might achieve as close as possible a racial balance of the population to be annexed. This Court found in Opinion dated August 20, 1982, that should this Court find at the merit hearing that the annexation ordinance is reasonable in whole or in part, then the City may not hold an election after such annexation until it complies with Section 5 of the Voting Rights Act. These objectors do not contend that this Court could add any area to the annexation but contend that the Petition should be dismissed because of the alleged discriminatory reason. This Court is of the opinion that there is no merit to this contention.
"The Mayor and Aldermen were unanimous in their vote in the adoption of the annexation ordinance and were of the firm opinion that such was necessary and could be carried out. Although the Court is not bound by the adjudication of the Mayor and Aldermen that the proposed extension was reasonable, the Court is entitled to give some weight to the opinion of the City authorities whose responsibility it was to determine whether or not they were justified in asking the approval of the Chancery Court of the ordinance here involved which they had adopted subject to the Court's approval. Extension of boundary of City *842 of Ridgeland, 388 So.2d 152. In Re Extension of the Boundaries of the City of Indianola, 85 So.2d 212. The mayor and aldermen, being a legislative body, found that the expansion herein sought is in, and required by, the public convenience and necessity. See Ritchie v. city of Brookhaven, 217 Miss. 860, 65 So.2d 436 (1953). The record reflects, and the Court finds, that the City met the burden of proof of public convenience and necessity for the expansion.
"The Court finds that the enlargement herein sought is reasonable; that reasonable public and municipal services will be rendered in the annexed territory within a reasonable time; and that the improvements set out in the ordinance will be completed within a reasonable time, not to exceed three (3) years from the effective date of the ordinance."
The chancellor clearly answered the present assignments of error filed by appellants Dynamics Corporation of America, et al., the industrial protestants from Area IV. On close examination of the findings of the chancellor, we do not find any merit to those assignments of error.
We need briefly to discuss issues raised by appellants Zellner Streeter, et al. As their assignments of error reveal, their appeal is based on a racial discrimination argument, basically contending that the city and the chancellor refused to annex a subdivision where these appellants reside, along with the total of over 900 residents. The evidence showed that the "Shady Lane" part of this excluded area is comprised mostly of funded, subsidized rental apartments, with the "Shady Oaks" area being made up of residences. These appellants contend that neither the city nor the chancellor gave sufficient reasons not to include this area within the newly annexed area.
At the outset, we note that the chancellor did consider these claims of the appellants in question and found them to be without merit. He did not make specific findings of fact with reference to the alleged impermissible racial discriminatory purposes. Taking the opinion as a whole, however, we find it fairly found from facts and applicable law that there was no discriminatory purpose. We are required by prior decisions and sound constitutional considerations to proceed on the assumption that the chancellor resolved all such factual issues for appellees. Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (1947); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983); and PMZ Oil Co. v. Lucroy, 449 So.2d 201 (1984).
The Streeter appellants now claim that they were excluded because of their race in violation of the Fourteenth and Fifteenth Amendments to the Constitution of the United States and that, as a result of this, the entire annexation is illegal and must be set aside by this Court.
Appellants' Fourteenth Amendment claim founders on the decision of the United States Court of Appeals for the Eighth Circuit in Wilkerson v. City of Coralville, 478 F.2d 709 (8th Cir.1973). Wilkerson holds that there is no recognized equal protection right to annexation by a municipality available either to the owners or residents of an area outside the city, whatever that area's economic or racial status.
Annexation is a state law matter. The laws of this state contain a procedure whereby persons such as these appellants may present their demand for annexation. MCA § 21-1-43 (1972). Upon presentation of a petition signed by at least two-thirds of the qualified electors residing in the area seeking annexation, the chancery court must hold a hearing as in other annexation cases. These appellants have chosen not to pursue the plain and adequate remedy available to them under state law. MCA § 21-1-45 (1972).
Appellants' claim under the Fifteenth Amendment violates two of the fundamental constitutional premises of our society. These are:
1. All persons have a constitutionally protected right that the strength of their vote will not be diluted by arbitrarily *843 drawn electoral district boundary lines. Reynolds v. Sims, 377 U.S. 533, 561-562, 568, 84 S.Ct. 1362, 1385, 12 L.Ed.2d 506 (1964); Perkins v. Matthews, 400 U.S. 379, 388, 91 S.Ct. 431, 436-37, 27 L.Ed.2d 476 (1971).
2. A person does not have to be a member of any particular race or group in order to have his right to vote respected. White persons have the same constitutional and legal immunity against the abridgment of, or dilution of, their right to vote on account of race and color as do black persons. United Jewish Organizations of Williamsburgh, Inc. v. Wilson, 510 F.2d 512, 521-22 (2nd Cir.1975) affirmed sub nom.; United Jewish Organizations of Williamsburgh, Inc. v. Carey, 430 U.S. 144, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977) (See particularly Steward, J., concurring, 430 U.S. at 179-80, 97 S.Ct. at 1016-17). See also McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); Regents of the University of California v. Bakke, 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978); Carter v. Gallagher, 452 F.2d 315, 325 (8th Cir.1971).
Having these premises in mind, at least one thing is clear. The City of Yazoo City has effected an annexation, the population of which is roughly 50% white and 50% black. This leaves the overall population as well as the voting age population in roughly the same racial make-up as it was before the annexation. Having in mind the principles stated above and the facts of this case, there is no constitutional infirmity in this annexation. We know of no case which holds that a municipality has a constitutional obligation to maximize the voting strength of a particular racial or ethnic minority.
We find no manifest error in the opinion and decree of the chancellor and therefore affirm the cause.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
BOWLING, J., specially concurs.
BOWLING, Justice, specially concurring:
I am compelled, after adopting the foregoing majority opinion, to express further thoughts about this cause as revealed by the record, briefs and oral argument. The record is unclear as to the way the Central Mississippi Legal Services became involved in this case. They ostensibly represent the 900 plus black population of the Shady Lane/Shady Oaks area.
Assuming this representation is proper, the residents and property owners of the areas have a complete legal remedy to request that the area be brought into the city limits.[1] Section 21-1-45, et seq., Mississippi Code Annotated (1972), provides the procedure to be taken if the area wishes to be incorporated within the city. This procedure has nothing whatever to do with the legal procedure now before us; that is, the annexation of certain areas by the city on proper legal petition under applicable statutes. Nevertheless, the lower court gave full consideration to the request of the objectors to proceed in the present cause. It is interesting to note that seven of those signing the objection papers were living within the city limits.
Before proceeding further, I point out and give full reliance on my record on fairness and equal opportunity to all people, regardless of race, color, and status in society. It is necessary now that I speak to the obvious and the picture is not good.
The appellants we are now discussing, in effect, readily admit that the purpose for their interference in the city's orderly annexation plans is to produce a situation that would result in a large black voter majority in the city limits. This is borne *844 out by statements in the appellant's brief as follows:
However, even if Court should find that the actions of the City are racially neutral on their fact, the 15th Amendment was violated nonetheless because the deletion of the Shady Lane/Shady Oaks neighborhood from the annexation was taken for the discriminatory purpose of preventing blacks from gaining numerical superiority in the City which would have an obvious impact on existing racial voting patterns ...
and
Indeed, committing the City to become majority black in population by adding more than 900 new black residents, a good number of which could immediately register to vote, would have a devastating impact on the existing white-controlled political power structure... .
In effect, these appellants are saying "We are not fighting for equal rights, we are fighting for superior rights."
The lower court received testimony from the white mayor, two black aldermen and two white aldermen. The two black aldermen were elected from two wards with a majority black voting strength. All five were in favor of annexation and all five gave valid reasons.
The Shady Lane/Shady Oaks people are now and have been for a long time receiving utility services, such as water, electricity, sewage disposal, garbage collection and fire protection. They have no special physical problems. The present annexation included another predominantly large black subdivision which does have physical problems, such as open sewage and lack of adequate other facilities. The residents of this subdivision are not objecting to the annexation.
The proof is positive that after the present annexation, the city of Yazoo City essentially will have 50-50 ratio between white and black.
There are further reasons why the city administration had cause not to include the Shady Lane/Shady Oaks subdivision. In addition to benefits already described, they are paying no city taxes. At the time of the annexation hearing, 244 area children were attending the Yazoo City Municipal Separate School District with the school being paid $375.27 by the county for each of those pupils. The city would lose this revenue and corresponding decrease in school services. The mayor and aldermen readily admit that this area would be considered for inclusion in the city along with other areas in the reasonably near future. All five city officials in addition to the experts, gave good and valid reasons, including those enumerated above, for not including the area in the present annexation.
As hereinbefore set out, it is clear from studying the records and the briefs in this cause that the real reason for the legal action by Central Mississippi Legal Services on behalf of the residents and property owners of the area is to engage in politics and create a black politically controlled city.
In the opinion of this writer, the Central Mississippi Legal Services has clearly overstepped its legal bounds, and this Court under its rules and its decisions takes notice of clear errors in legal proceedings before it.
In 1974 the Congress of the United States established the legal services corporation[2], giving as its purpose that:
(1) there is a need to provide equal access to the system of justice in our nation for individuals who seek redress of grievances; (2) there is a need to provide high quality legal assistance to those who would be otherwise unable to afford adequate legal counsel and to continue the present vital legal services program; (3) providing legal assistance to those who face an economic barrier to adequate legal counsel will serve best the ends of justice and assist in improving opportunities for low-income persons consistent with the purposes of this chapter; *845 (4) for many of our citizens, the availability of legal services has reaffirmed faith in our government of laws; (5) to preserve its strength, the legal services program must be kept free from the influence of or use by it of political pressures; and (6) attorneys providing legal assistance must have full freedom to protect the best interests of their clients in keeping with the Code of Professional Responsibility, the Canons of Ethics, and the high standards of the legal profession. (Emphasis supplied).
The act never intended for "crusaders" to go outside the bounds of the purpose of the act to play with politics in any state or political subdivision.
Under the section of the Act setting out "Definitions" (§ 2996A), the term "eligible client" means "any person financially unable to afford legal assistance."
In the present cause, the Mississippi Legal Services is purported to represent over 900, all black residents in the subject area.
Discounting a proportion of students, there are over 300 families living in the affected area. Do they all as a group need free taxpayer funded legal representation?
A small donation by each family and property owner would be ample to raise the whole area above any poverty level and sufficient for securing legal representation in the present cause or in a proper proceeding under the proper statutes as discussed above. There certainly is no showing whatever in this record that the people of this area, as required by Congress in setting up the Legal Services Corporation, are entitled to be classed as an "eligible client" as that term is above described.
I certainly do not mean to be unduly harsh on the Legal Services Corporation. I speak as a member of this Court and not as a taxpayer, from whose pockets these services are funded. The Legal Services Corporation has performed great service to this state. They have represented a lot of people who needed and were entitled to adequate legal representation under the purpose for which the Legal Services Corporation was created. There are many more "out there" of every race, color or creed, who are in need of legal services and are unable to secure them, mainly because of financial inabilities. Both the legal services organizations, either the federally funded organization or those attorneys giving their time free through the Mississippi Bar Association, are to be highly commended. It is regretable, however, that we occasionally run into situations where the "free" legal service is thoroughly abused, as has been done in the case sub judice.
NOTES
[1] There is a clear implication in the record that the majority of the residents of this area do not want to be within the city.
[2] 42 U.S.C.A. § 2996, et seq.