473 So.2d 174 (1985)
Michael P. BRYANT and Patricia Bryant
v.
Mary Francis CAMERON.
No. 54689.
Supreme Court of Mississippi.
July 17, 1985.
Rehearing Denied August 7, 1985.
*175 David Oliver, Gulfport, for appellants.
Gerald A. Dickerson, Lucedale, for appellee.
Before WALKER, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
As it did of the chancellor below, this case calls for our exercise of solomonic wisdom without regard to whether we possess it, as a child is contested for by her natural mother and would be adopting parents.
Our law provides a procedure whereby such children may be adopted. Miss. Code Ann. §§ 93-17-1, et seq (Supp. 1984) Persons may employ that procedure with confidence and certainty. We trust that procedure may be found consonant with justice and fairness in this area where there are so *176 many shades of gray. Our problem here is that this procedure for adoption was ignored  indeed our law and its facilities seem to have been wholly irrelevant to the parties until it was too late. Under the circumstances we have no alternative but to affirm the chancellor's determination that custody of the child and the privilege and responsibilities attendant upon her upbringing must vest in the natural mother.

II.

A.
In July of 1980 Mary Francis Cameron was living in Wiggins, Mississippi, and was divorced, more or less broke, and pregnant. She already had responsibility for a then six year old daughter from her defunct marriage. Cameron was the plaintiff below and is the appellee here.
At the same time Michael Lee Bryant and Patricia Bryant were experiencing a childless marriage. The Bryants were defendants below and are appellants here. In July of 1980 and through much of the time relevant here their names were Michael Lee Hart and Patricia Hart. The record reflects that their names were changed from Hart to Bryant by proceedings subsequent to the original decree in this case.
Mary Francis Cameron and the Harts/Bryants learned generally of each other's situation at a time when Cameron was employed as a security guard at the International Paper Plant in Wiggins where Mr. Hart/Bryant was also employed. Cameron approached the Harts/Bryants regarding their childless condition and her pregnancy and out of the nexis of all parties' circumstances an agreement was reached  the exact conditions of which, as well as the legal effect of which, are hotly disputed. Cameron contends that the Harts/Bryants agreed to help her out financially and take care of the child until she was back on her feet again. The Harts/Bryants contend Cameron asked them to help her out financially and agreed that they could adopt the baby. Cameron responds by urging that any such adoption agreement is legally unenforceable.
On April 12, 1981, Cameron gave birth to a female child in Forrest General Hospital in Hattiesburg, Mississippi. The Harts/Bryants had taken Cameron to the hospital and by design had registered her as "Mrs. Patricia Hart". For all intents and purposes, the parties held Cameron out as the wife of Mr. Hart/Bryant. The birth certificate was likewise made out in the name of the Harts with the child's name being recorded as Candice Michelynn Hart.
The Harts/Bryants state that they paid all hospital and medical expenses incident to prenatal care and child birth. Cameron agrees that the Harts/Bryants paid a substantial portion of the expenses, but she contends that she paid $500.00 on the hospital bill.
After the birth Cameron and the baby went to the home of the Harts/Bryants in Wiggins and stayed with them for a couple of days. Following this, Cameron moved to her sister's house and went to work for her brother in Lucedale. The child remained with the Harts/Bryants.
The parties agree that Cameron visited the child thereafter, but differ regarding the extent and frequency of such visits. Cameron states that for the first month she went to visit the child "every day and then after that I'd go in the evenings and on weekends". Mrs. Hart/Bryant testified that Cameron came back to visit the baby during the first month "maybe on a weekly basis, but after that, she quit coming". Cameron contends that she did not visit more often because the Harts/Bryants had become inaccessible  they did not answer the phone when Cameron called and were not at home on weekends when she came to visit.
The Harts/Bryants testified that prior to the birth there was an unequivocal agreement between them and Cameron that they could adopt the child. Cameron denies this. Apparently no one thought to contact a lawyer or otherwise employ the facilities of the law to the end that there would be *177 no doubt regarding the legal parentage of the child.

B.
On November 9, 1981, some 211 days after the birth of Candice Michelynn Hart, Mary Francis Cameron commenced this civil action by filing her complaint in the Chancery Court of George County, Mississippi. In relevant part, she named the Harts/Bryants as defendants and sought an order restoring to her custody of the child to which she had given birth coupled with an amendment to the child's birth certificate to reflect her natural parents.[1] The Harts/Bryants answered and denied the essential allegations of the complaint and cross-claimed for adoption.
The matter was thereafter transferred to the Chancery Court of Stone County and after considerable discovery and other pretrial proceedings not relevant here, the matter came on for hearing on its merits in chancery court in Wiggins, Mississippi, on August 11, 1982. In due course, on October 21, 1982, the chancery court ordered the child returned to Cameron, the Harts'/Bryants' cross-claim for adoption being denied.
The initial response of the Harts/Bryants was a petition for rehearing, but that was summarily denied on October 26, 1982. The Harts/Bryants then moved for supersedeas pending appeal, the effect of which was a request that they be allowed to keep the child pending appeal to this Court.
Meanwhile, on a date not made clear in the record, the Harts/Bryants, allowing the power of their feelings for the child to subsume their respect for the law, took the child and moved to Chester, South Carolina, and, as indicated above, had their last names legally changed to Bryant. This was without notice to or permission of the Chancery Court of Stone County and was in contravention of the judgment of that court that the child be delivered to her natural mother. Following habeas corpus proceedings in South Carolina, the details of which are not important here, the parties returned to Mississippi and a hearing was held in the chancery court regarding the Harts'/Bryants' application for supersedeas. By order entered January 25, 1983, the chancery court denied the Harts'/Bryants' application for supersedeas and directed them to deliver the child to Cameron forthwith. We assume they have complied. In any event the matter is now ripe for our review.

III.
The adoption of children is a matter carefully regulated by rules of law statutory in origin. Of particular relevance here is Miss. Code Ann. § 93-17-7 (Supp. 1984) which provides
No infant shall be adopted to any person if either parent ... shall appear and object thereto before the making of a decree for adoption, unless it shall be made to appear to the court ... that the parent so objecting had abandoned or deserted such infant. .. .
Here Mary Francis Cameron, the mother of the child, objected to the adoption and under Section 93-17-7 that would seem to end the matter unless it be shown that she had "abandoned or deserted" the child.
The advance assurances said to have been given by Cameron  taking as true the Harts'/Bryants' version of the agreement  are of no legal force and effect. By law valid and enforceable consent to adoption may be given by the natural parent only after three days have elapsed following the birth of the child. Miss. Code Ann. § 93-17-5 (1972). Any consent to adoption, verbal or otherwise, given prior to that time is legally ineffective. Where our law requires a written agreement or acquiescence regarding a matter before a party may become bound and sets forth the manner, form or timing within which such agreement must be made to be valid, any agreement not conforming to that facility *178 is unenforceable. This is so whether an individual is seeking to make a will, to bind himself to an agreement covered by the statute of frauds, or to agree to the adoption of his or her child.
The thrust of the appeal of the Harts/Bryants is a claim that Mary Francis Cameron had indeed abandoned or deserted the child. In considering this question, we do not write upon a clean slate.
The Harts/Bryants are seeking to sever the rights of a natural parent in and to her child. In this context, we have repeatedly stated that
the burden is upon the petitioner to show by clear and convincing evidence [citation omitted] that the objecting parent has either abandoned or deserted the child or is mentally or morally or otherwise unfit to rear or train the child. Once that has been established, the best interests of the child is to be considered [citation omitted]. Petit v. Holifield, 443 So.2d 874, 878 (Miss. 1984); see also Miller v. Arrington, 412 So.2d 1175, 1178 (Miss. 1982); Yarber v. Dearman, 341 So.2d 108, 109-10 (Miss. 1977); Simpson v. Rast, 258 So.2d 233, 236 (Miss. 1972); Ford v. Litton, 211 So.2d 871, 873 (Miss. 1968); Newman v. Sample, 205 So.2d 650, 652 (Miss. 1968).
This foregoing rule works in tandem with Miss. Code Ann. § 93-17-7 (Supp. 1984) concerning the criterion for determination of unfit parents' rights, and with Miss. Code Ann. § 93-15-103(3) (Supp. 1984) concerning the grounds for determination of parental rights. Petit, 443 So.2d at 877.
Our cases suggest a distinction between "desertion" and "abandonment".
In Ainsworth v. Natural Father, 414 So.2d 417 (Miss. 1982), we reiterated the definition of "abandonment" as importing any conduct on the part of the parent which evinces a settled purpose to forego all duties and relinquish all parental claims to the child. We further went on to define the verb "desert" as forsaking one's duties as well as a breaking away from or breaking off associations with some matter involving a legal or moral obligation or some object of loyalty. We noted that abandonment has to do with the relinquishment of a right or claim whereas desertion involves an avoidance of a duty or obligation. Petit, 443 So.2d at 878; see also Ainsworth v. Natural Father, 414 So.2d 417, 419-20 (Miss. 1982); Doe v. Attorney W., 410 So.2d 1312, 1316 (Miss. 1982).
"Abandonment" does not necessarily refer to some overall course of conduct as "desertion" would, but rather "abandonment" may result from a single decision by a parent, at a particular point in time, where that parent decides to relinquish parental claims. For instance, when after the three day waiting period a parent signs the paper to renounce all rights in the child and place him or her for adoption, at that moment the parent may be said to have abandoned that child. One does not need to wait and see if the natural parent will make overtures to visit the child that has been placed up for adoption before declaring that "abandonment" has taken place.
We recognize that our case law regarding "abandonment by agreement" is less than clear and unequivocal. Compare Wright v. Fitzgibbons, 198 Miss. 471, 476-77, 21 So.2d 709, 710 (1945) (unwed mother concealed her motherhood and agreed to give child to another amounted to abandonment) and Fullilove v. Banks, 62 Miss. 11, 12-13 (Miss. 1884) (mother's promise never to take the child back resulted in her loss of custody) with Mitchell v. Powell, 253 Miss. 867, 886, 179 So.2d 811, 813 (1965) (father's remarriage and move five miles away did not constitute abandonment) and Schillereff v. Adamany, 240 Miss. 275, 277-79, 127 So.2d 392, 393 (1961) (adulterous mother leaving child with others did not amount to abandonment).
We hope to reduce any attendant confusion by declaring foursquare that concept of abandonment is always curtailed by the statutory proviso that enforceable consent to adoption may not be given before three days after birth, and then only in writing. Miss. Code Ann. § 93-17-5 (1972). To give effect to that rule here, any abandonment *179 by written agreement must occur after this three day waiting period  in this instance, after April 15, 1981. A child not in being obviously cannot be abandoned. Our question then becomes whether Cameron abandoned or deserted the child more than three days after birth by execution of a written consent to adoption or by any other means. See C.C.I. v. Natural Parents, 398 So.2d 220, 226 (Miss. 1981). The chancellor stated, in his judgment, that there was an understanding between the Harts/Bryants and Cameron regarding the child. He nonetheless made no finding of abandonment. Looking to the conduct of Cameron after April 15, 1981, the evidence falls far short of establishing on Cameron's part either the execution of a timely written consent or the establishment of
"a settled purpose to forego all duties and relinquish all parental claims to the child". Petit v. Holifield, 443 So.2d 874, 878 (Miss. 1984)
We have considered the claim that Cameron has deserted the child in the context of the statutory proviso, Miss. Code Ann. § 93-15-103(3) (Supp. 1984) authorizing termination of parental rights where
(a) a parent has deserted without means of identification or abandoned and made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year; ... .
Again, the evidence falls short. Cameron's suit was brought within 211 days  six months, 27 days  of birth. Even under the testimony of Mrs. Hart/Bryant, Cameron's visitation of the child had continued into the six month period immediately pre-suit.
To be sure, the chancellor's findings of fact on the crucial points referenced to the claims of abandonment or desertion leave much to be desired. This is of no comfort to the Harts/Bryants as they crash headlong into established principles regarding our scope of review. Not only are we required to respect findings of fact made by a chancellor supported by credible evidence and not manifestly wrong, e.g., Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983). Beyond that, with respect to issues of fact where the chancellor made no specific finding, we are required by our prior decisions and by sound institutional considerations to proceed on the assumption that the chancellor resolved all such fact issues in favor of appellee. See, e.g., Dungan v. Dick Moore, Inc., 463 So.2d 1094, 1100 (Miss. 1985); In Re Enlargement of Boundaries of Yazoo City, 452 So.2d 837, 842 (Miss. 1984); Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (Miss. 1947).
Having due regard to the totality of the testimony in this record, the chancellor's actual and implied findings on abandonment and desertion may not be disturbed. As indicated above, the chancellor's implied determination that subsequent to the three day waiting period Cameron's conduct evinced no settled purpose to forego all duties and relinquish all parental claims to the child is beyond our authority to disturb. Similarly with the chancellor's implied determination that, having in mind the six month statutory period of Section 93-15-103(3)(a), Cameron did not forsake her duties to the child or break off association with or obligations to the child. Under these circumstances we may only affirm.

IV.
We announce this decision with sadness. Forsaking self-righteousness for humanity, we empathize with the Harts/Bryants. Within them that most powerful and often most positive of human emotions has been dashed. What is sadder is that it could all have been avoided. The law possesses a greater capacity for bringing joy and fulfillment to people, in spite of popular jests to the contrary. Our law provides a means whereby adopting parents may have and raise and nurture their child with complete security from any legal hereafter. It provides a means whereby natural parents may surrender a child with the certain knowledge that second thoughts will not be tolerated. The facilities available lying unused, *180 our law mandates that Candice Michelynn remain with her natural mother.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Ernest Joseph Cameron, Mary Francis' ex-husband, entered his appearance and acknowledged paternity. No issue regarding Ernest Joseph Cameron is tendered on this appeal.