DICKINSON, Presiding Justice,
dissenting.
¶ 21. The chancellor awarded primary custody of Jason, a minor child, to his grandparents without making a specific finding — by clear and convincing evidence — that Jason’s natural parents had abandoned him. This error, in my view, requires reversal, so I respectfully dissent.
¶ 22. The chancellor did not find, by clear and convincing evidence, that Tara had abandoned or deserted her child. So, according to this Court’s precedent, the evidence in the record is insufficient to overcome the natural-parent presumption. Forced to recognize that the chancellor didn’t actually say the natural-parent presumption was overcome, and didn’t actually find Tara had abandoned or deserted her child — indeed, the chancellor refused to terminate Tara’s parental rights — the majority engages in an episode of appellate fact-finding that is as incorrect for the case before us today as it is dangerous for cases later to come. The majority simply says that Tara’s actions “are consistent with desertion.” (Emphasis added.)
¶ 23. A chancellor’s discretion to award custody of children to third parties, rather than their natural parents, must be exercised within the parameters of the law. The controlling statute in Mississippi limits a chancellor’s authority to award custody to third parties by requiring
a finding by the court that both of the parents of the child have abandoned or deserted such child or that both such parents are mentally, morally or other *50 wise unfit to rear and train the child.... [5]
¶24. And this Court has long recognized, “our society demands, and the law approves the rule, that the natural parents of children have the natural right to the nurture, care and custody of their children.” [6] So, when a custody dispute arises between a natural parent and a third party-including a grandparent — “it is presumed that it is in the best interest of a child to remain with the natural parent as opposed to a third party.”[7] The presumption may be overcome, but only where the chancery court finds the natural parent has abandoned his or her child.[8]
¶ 25. At the conclusion of the hearing in this case, the chancellor discussed Jason’s custody for six pages of transcript without ever saying Tara had abandoned or deserted Jason. In fact, the chancellor specifically stated that Tara had “good intentions,” but (as the chancellor put it):
[M]other, you should be raising this baby. You should be raising this baby, but you’re not ready yet.... I don’t want this child going out to Arizona with his mother still being married to her first husband and having a boyfriend out there. It’s just not healthy. I know our morals have changed. I know people accept adultery now. I know people accept live-ins now. I’m sorry. I’m from the old school, I don’t.
¶ 26. After discussing his concerns from the bench, the chancellor never mentioned abandonment or desertion or that Tara had failed to exercise parental rights. The chancellor’s order — prepared by the grandparents’ counsel — says nothing about the moral concerns the chancellor voiced from the bench. Instead, it states as the reason for granting custody to the grandparents, the following:
[T]he Court finds that [Tara] has by her long and continuous absences from [Jason] failed to exercise her parental rights and fulfill her parental responsibilities, which has necessitated [the Smiths] to assume the role of parents to [Jason], who has been raised by [the Smiths] for virtually his entire life....
¶ 27. While I am somewhat concerned with the difference in the chancellor’s concerns announced from the bench and those stated in the order, the fact is that neither the bench opinion nor the order states proper grounds for bypassing a natural parent and awarding custody to third parties.
¶ 28. The majority — recognizing that the grandparents’ in loco parentis status was not a sufficient basis to require examination of the Albright factors[9] — speculated that the chancellor had found desertion. That contradicts the chancellor’s own words, which were as follows: “due to [the Smiths] being found to stand in the position of in loco parentis concerning [Jason,] the Court shall use the Albright factors to determine custody.... (Emphasis added.) One would think the chancellor would be in the best position to say what his reason was.
¶29. The majority then proceeds to make an astonishing statement. Says the *51 majority: Since the chancellor here proceeded to conduct an Albright analysis, he treated the natural-parent presumption as though it had been overcome; thus, he implicitly and necessarily found that it had been. We must decide whether he did so based on the doctrine of in loco parentis— which would be error — or based on a finding of desertion by Tara....
¶ 30. This' Court has never held that “long and continuous absences” and failure to exercise parental rights and fulfill parental responsibilities are the test for a finding of abandonment. Abandonment requires an intent to abandon and relinquish all rights, and this Court has steadfastly required a chancellor to find that the natural parent intended
to forgo all duties and relinquish all parental claims to the child.... The test is an objective one: whether under the totality of the circumstances, be they single or multiple, the natural parent has manifested his severance of all ties with the child.... [T]he party charging abandonment must prove his charge “by clear and convincing evidence.”[10]
Nothing in this record suggests that Tara intended to relinquish her rights and sever all ties with her child.
¶ 31. A parent’s long and continuous absence and failure to exercise parental rights may, or may not, be of sufficient duration — and so lacking in reasonableness under the circumstances — as to justify a finding of abandonment or desertion. But a chancellor must make that call-and the law requires that it be made by clear and convincing evidence.[11]
¶ 32. The chancellor in this case did not make a finding of abandonment or desertion. The majority assumes not only that the chancellor meant to find abandonment or desertion, but also that he meant to do so by clear and convincing evidence. The chancellor never did. I cannot join the majority’s dangerous course of speculation. A natural parent’s rights are far too important for appellate courts to make assumptions about a chancellor’s required findings and the burden of proof.
¶ 33. Ultimately, the law holds the chancellor responsible for evaluating the quality and quantity of evidence in finding abandonment.[12] That is to say, for instance, that under the facts and circumstances of a particular case, a one-year absence might evince an intent to forgo parental rights, while under the facts and circumstances of another case, it might not.
¶ 34. I find the law to be crystal clear on this point: A chancellor must make an on-the-record finding that, under the totality of the facts and circumstances of the case, the natural parent’s conduct evinces an intent to relinquish parental rights and abandon or desert the child. Any failure by the chancellor to make this finding — by clear and convincing evidence — requires reversal. The chancellor failed to do so in this case, so I would reverse and remand this case for further review.
KING, J., JOINS THIS OPINION.

. Miss.Code Ann. § 93-5-24(l)(e) (Rev.2004).

. Simpson v. Rast, 258 So.2d 233, 236 (Miss.1972).

. Vaughn v. Davis, 36 So.3d 1261, 1265 (Miss.2010) (citing In re Laverock, 23 So.3d 424, 429-30 (Miss.2009)).

. Miss.Code Ann. § 93-5-24(1 )(e)(i) (Rev.2004).

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Albright listed certain factors that must be considered in determining the best interest of a child in custody cases. Id.

. Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992) (quoting Bryant v. Cameron, 473 So.2d 174, 178 (Miss.1985)).

. Id.

. Id.