755 So.2d 558 (2000)
In the Matter of the Petition of M.L.W. and R.R.W. for the Adoption of a Minor Child.
M.L.W. and R.R.W., Appellants,
v.
K.W.C., Appellee.
No. 1998-CA-01226-COA.
Court of Appeals of Mississippi.
February 22, 2000.
*559 Deedy Boland, Tupelo, Attorney for Appellants.
T. Victor Bishop, Fulton, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., LEE, MOORE, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Natural mother (M.L.W.) and stepfather (R.R.W.) filed suit in Itawamba County Chancery Court to terminate the parental rights of the natural father (K.W.C.) and for adoption of the minor child (K.F.C.) by the stepfather. The chancellor found that the appellants failed to satisfy their burden by proving by clear and convincing evidence that K.W.C. had either abandoned the minor child or that he was mentally or morally unfit, as provided by Miss.Code Ann. § 93-15-103 (Rev.1994). On appeal, M.L.W. and R.R.W. raise the following issues for consideration
I. WHETHER THE COURT ERRED IN CONCLUDING THAT THE APPELLANTS HEREIN FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE NATURAL FATHER, K.W.C., HAD DESERTED OR ABANDONED THE MINOR CHILD BY HAVING NO CONTACT WITH K.F.C., HIS CHILD UNDER THE AGE OF THREE YEARS, FOR A PERIOD OF SIX MONTHS OR LONGER.
II. WHETHER APPELLANTS DEMONSTRATED BY CLEAR AND CONVINCING EVIDENCE THAT THERE WAS A SUBSTANTIAL EROSION OF THE RELATIONSHIP BETWEEN K.W.C. AND K.F.C. WHICH WAS CAUSED AT LEAST IN PART BY K.W.C.'S SERIOUS NEGLECT, ABUSE, PROLONGED AND UNREASONABLE ABSENCE, UNREASONABLE FAILURE TO VISIT OR COMMUNICATE OR PROLONGED IMPRISONMENT.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On July 12, 1994, M.L.W. and K.W.C. were married. On June 22, 1995, K.F.C. was born. The couple separated in February of 1996. M.L.W. filed for divorce on June 12, 1996. A temporary order was entered on July 16, 1996 granting temporary custody of K.F.C. to the mother with the natural father having supervised visitations with the minor child at the home of his mother. The temporary *560 order also provided that K.W.C. pay $150 per month in child support. K.W.C. failed to file an answer to the complaint for divorce and failed to appear in court. He claimed he never received any notice of the court date. The notice was sent to his mother's house at a time when he was residing elsewhere. A final decree was entered on March 11, 1997 giving M.L.W. full custody of the minor child and adjudging K.W.C. unfit to have visitation privileges. The order provided that K.W.C. would have to petition the court for any visitation.
¶ 4. M.L.W. began dating R.R.W. in October 1996. In March 1997 K.F.C. began calling R.R.W. "Daddy." On April 6, 1997, R.R.W. and M.L.W. were married. In 1998, R.R.W. and M.L.W. had a son together. M.L.W. also has another daughter born before her marriage to K.W.C.
¶ 5. K.W.C. had visitation with his daughter regularly between February and July 1996, at which time M.L.W. stopped the visits because she learned that K.W.C.'s mother was not supervising the visits. K.W.C. once again kept and took care of his daughter for two to three weeks in July 1996. He testified that M.L.W. told him he could not see K.F.C. until they went to court to get the temporary order determining custody, so he took the minor child and kept her and cared for her, (without her mother's permission) until shortly before the court date. M.L.W. testified that she knew K.W.C. had written some bad checks and since she had been unsuccessful in getting her child back on her own, she told the police where he was and they arrested him, allowing her to get K.F.C. back.
¶ 6. K.W.C. has paid approximately $ 470 in child support since the separation. For Christmas 1996 his mom bought a push toy to give to K.F.C. from him because he did not have any money. K.W.C. testified that M.L.W. would not let him give K.F.C. the toy until finally K.W.C.'s mother gave it to the child a few weeks after Christmas. K.W.C. was incarcerated from April 1997 until September 1997 which prevented him from seeing K.F.C. on a regular basis. However, K.W.C. maintains that he visited with his daughter regularly for several weeks while she was at the babysitters without M.L.W's knowledge because the person he drove to work with used the same babysitter. He also testified that he sent her a letter with a poem he wrote for her on her birthday in 1997, which M.L.W. stated she never received. K.W.C's mother also sent a rocking bumble bee to the child from her father for her birthday in 1997 because he was in jail. Finally, for Christmas 1997 he bought her a Tickle Me Cookie Monster and a Talk and Play Tape Recorder set which he stated M.L.W. would not let him give the child. He brought the gifts to court.
¶ 7. In January 1998 K.W.C. went to the Department of Human Services to have them start taking child support out of his checks. At the time of the trial M.L.W. had not yet received any of these checks. K.W.C. petitioned the court for visitation shortly before the beginning of the trial to terminate his parental rights. He testified that he had not done this sooner because he had not had the money for a lawyer. He also stated that he was not aware of the gravity of the situation. He testified that he was unaware that his parental rights could be terminated and he wanted to pay off the bad check charges, get a car to get back and forth to work with and essentially get his life back together before he petitioned for visitation.
¶ 8. K.W.C. testified that M.L.W. would not allow him to see his daughter and that she repeatedly told K.W.C. that he was not her father anymore and that K.F.C. did not need K.W.C. anymore because she had a daddy.
¶ 9. M.L.W. and R.R.W. testified that K.W.C. had not contacted them to try and see the child. Furthermore, they testified that R.R.W. had been the father figure in K.F.C.'s life since August 1996. R.R.W. *561 has a good job which enables M.L.W. to be able to stay at home with the children. R.R.W. testified that he loves K.F.C. as if she were his own and wants to take care of her and will continue to take care of her whether he is able to adopt her or not.
¶ 10. Ms. Robbie Byars was appointed as Guardian Ad Litem for K.F.C. by the chancellor. Ms. Byars recommended termination of K.W.C.'s parental rights. Her report stated that she sent four letters to K.W.C. in an attempt to discuss the pending adoption but K.W.C. never contacted her. K.W.C. testified that he only received two letters and he gave them to his lawyer.
¶ 11. The chancellor denied the petition to terminate K.W.C.'s parental rights and the petition to adopt the minor child. The chancellor explained:
Although not previously ordered to pay child support, [K.W.C.] has clearly not fulfilled his moral obligation to properly support his child; however, the failure alone to pay child support is insufficient to constitute abandonment. In Re: Adoption Of A Female Child, 412 So.2d 1175 (Miss.1982).
While the misdemeanor crimes for which [K.W.C.] was incarcerated do not enhance his character, those infractions are not of such a magnitude to indicate his moral unfitness as a parent. While his conduct which led to his incarceration is by no means excusable, his incarceration did impose an impediment to [K.W.C.]'s ability to provide his child with support and to have contact with his child in other forms.
Even though [R.R.W.] loves the child, has provided for her and is willing and anxious to care for her and can and will provide fine things for her, this, in itself, does not justify the taking of the child from her natural father. If a person could adopt a child from the natural parent because another could better provide for her, give her things she needed and wanted, educate her and provide a fine home for her, then many people in the so-called "under-privileged" group could have their children taken away from them because it could be said that their best interest was prompted by doing so. That is not the test. Matter of Yarber, 341 So.2d 108 (Miss.1977).
[K.W.C.] is hardly an ideal parent and the evidence suggests that he may not even be the best parent between himself and [R.R.W.]; however, the Court is of the opinion that the Petitioners have not proven by clear and convincing evidence that [K.W.C.] has evidenced a settled purpose to forego all parental duties and relinquish all parental claims to the child, Ainsworth, 414 So.2d at page 420.

ANALYSIS

I. WHETHER THE LOWER COURT ERRED IN CONCLUDING THAT THE APPELLANTS HEREIN FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE NATURAL FATHER, K.W.C., HAD DESERTED OR ABANDONED THE MINOR CHILD BY HAVING NO CONTACT WITH K.F.C., HIS CHILD UNDER THE AGE OF THREE YEARS, FOR A PERIOD OF SIX MONTHS OR LONGER.
¶ 12. We begin by addressing our standard of review. "The chancellor's findings of fact are viewed under the manifest error/substantial credible evidence test." Vance v. Lincoln County Dept. of Public Welfare by Weathers, 582 So.2d 414, 417 (Miss.1991). This standard gives the trial court discretion because the chancellor benefits from having heard the testimony and evidence while observing the witnesses and their demeanor. Additionally, in termination of parental rights cases the burden of proof must be clear and convincing and rests with the petitioner. Ainsworth v. Natural Father, 414 So.2d 417, 420 (Miss.1982). In other words the petitioner must prove that the natural parent either abandoned or deserted the child *562 or is mentally or morally or otherwise unfit to rear or train the minor child. Petit v. Holifield, 443 So.2d 874, 877 (Miss. 1984).
¶ 13. M.L.W. and R.R.W. argue on appeal that the overwhelming amount of credible evidence supported the allegation of desertion and that the chancellor erred in not terminating K.W.C.'s parental rights. K.W.C. maintains that the chancellor was not in error since the petitioners did not prove by clear and convincing evidence that he had no contact with his child since 1995.
¶ 14. The pertinent Mississippi Adoption statute Miss.Code Ann. § 93-17-7 reads in part:
No infant shall be adopted to any person if either parent, after having been summoned, shall appear and object thereto before the making of a decree for adoption, unless it shall be made to appear to the court from evidence touching such matters that the parent so objecting had abandoned or deserted such infant or is mentally, or morally, or otherwise unfit to rear and train it, including but not limited to, being within any of the grounds requiring termination of parental rights as set forth in subsections (2) and (3)(a), (b), (d) or (e) of Section 93-15-103 in either of which cases the adoption may be decreed notwithstanding the objection of such parent, first considering the welfare of the child, or children, sought to be adopted.
¶ 15. Additionally, the Mississippi Termination of Parental Rights statute, Miss. Code Ann. § 93-15-103 (Supp.1986) reads in part:
(3) Grounds for termination of parental rights shall be based on one or more of the following factors:
(a) A parent has deserted without means of identification or abandoned and made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year; or
. . . .
(e) When there is an extreme and deepseated antipathy by the child toward the parent or when there is some other substantial erosion of the relationship between the parent and child which was caused at least in part by the parent's serious neglect, abuse, prolonged and unreasonable absence, unreasonable failure to visit or communicate, or prolonged imprisonment.
¶ 16. Thus it is a two-step process in determining whether or not a party should be permitted to adopt a child. The court must first determine that one of the grounds for adoption is present: (1) desertion or abandonment or (2) moral unfitness. Natural Mother v. Paternal Aunt, 583 So.2d 614, 618 (Miss.1991). Secondly, "[t]he adoption statute also requires a definite adjudication that the best interest of the child is promoted or enhanced by the proposed adoption." Id.; Ainsworth, 414 So.2d at 421.
¶ 17. Abandonment is defined as:
[A]ny course of conduct on the part of a parent evincing a settled purpose to forego all duties and relinquish all parental claims to the child. It may result from a single decision by a parent at a particular point in time. It may arise from a course of circumstances. The test is an objective one: whether under the totality of the circumstances, be they single or multiple, the natural parent has manifested his severance of all ties with the child.
Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992).
¶ 18. Abandonment deals with the relinquishment of a right or claim, whereas desertion involves an avoidance of a duty or obligation. Ainsworth, 414 So.2d at 420.
¶ 19. In the case at bar, there was conflicting evidence as to how long K.W.C. went without seeing his daughter. Both parties admitted that K.W.C. visited with his daughter during the summer of 1996. *563 K.W.C. testified that he saw K.F.C. on several occasions in the beginning of 1997 through his mother and by visiting her secretly at her babysitters. Furthermore, K.W.C. testified that he sent a letter with a poem, which he recited in part into the record, to K.F.C. in July 1997. Although this does not excuse K.W.C.'s conduct, the fact that he was incarcerated from April 1997 until September 1997 contributed to his inability to visit with the minor child. There was also testimony showing that K.W.C. bought Christmas gifts which he attempted to give to the child. Thus, it is apparent to this Court that although K.W.C. should have made more of an effort to spend time with the minor child, he does not appear to have evinced a settled purpose to forego all parental rights and relinquish all parental claim to the minor child.
¶ 20. M.L.W. and R.R.W. also argue that K.W.C. failed to pay child support. We admonish K.W.C. that all parents are obligated to pay child support. However, the Supreme Court has held that failure to pay child support alone is insufficient to constitute abandonment. In Re In re Adoption of Female Child, 412 So.2d 1175, 1175 (Miss.1982). Thus, as we have already stated, the record does not reflect that K.W.C. has shown a desire to forego his duties in regards to K.F.C. and his failure to pay child support does not substantiate actions as severe as termination of his parental rights. Furthermore, he has shown a desire to visit with his daughter, although his attempts were feeble at best, and he did attempt to keep up relations with his daughter which prohibits a termination of his parental rights.

II. WHETHER APPELLANTS DEMONSTRATED BY CLEAR AND CONVINCING EVIDENCE THAT THERE WAS A SUBSTANTIAL EROSION OF THE RELATIONSHIP BETWEEN K.W.C. AND K.F.C. WHICH WAS CAUSED AT LEAST IN PART BY K.W.C.'S SERIOUS NEGLECT, ABUSE, PROLONGED AND UNREASONABLE ABSENCE, UNREASONABLE FAILURE TO VISIT OR COMMUNICATE OR PROLONGED IMPRISONMENT.
¶ 21. Once again, the standard of review is the manifest error or substantial credible evidence test. Vance, 582 So.2d at 417. Furthermore, in termination of parental rights cases the burden of proof must be clear and convincing. Ainsworth, 414 So.2d at 420.
¶ 22. We have already discussed that K.W.C. did not spend enough time with the minor child nor did he exert enough effort attempting to spend time with the child. However, the record is also clear that M.L.W. would not have let K.W.C. visit with the child had he made more attempts. We hold that K.W.C. made feeble attempts to contact his daughter, provide for her, and give her the gifts he bought for her, although it is also apparent that M.L.W. contributed to the problem. M.L.W. did not want K.W.C. to have contact with the child and would not accept gifts the natural father attempted to give. Furthermore, the record tends to show that M.L.W. was more than content with the idea that R.R.W. was now K.F.C.'s "Daddy." Adoption and termination of parental rights are not always the best option. Had M.L.W. cooperated with K.F.C. and not discouraged the attempts he made to stay in contact with his daughter, the issues of abandonment and adoption would not be before us.
¶ 23. We hold that although K.W.C. is hardly an ideal parent, we are unable to say that M.L.W. and R.R.W. have proven by clear and convincing evidence that K.W.C. has abandoned his child or that he is unfit within the meaning of the law. We agree with the chancellor in denying the petition for termination of parental rights and adoption of the minor child.
¶ 24. THE JUDGMENT OF THE ITAWAMBA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS *564 OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR.