443 So.2d 874 (1984)
Gene PETIT
v.
John N. HOLIFIELD, et ux.
No. 54049.
Supreme Court of Mississippi.
January 4, 1984.
*875 William F. Vick, Vick & Diaz, Thomas J. Lowe, Jr., Jackson, for appellant.
Donald G. Barlow, Clinton, for appellee.
Before WALKER, P.J., and BOWLING and PRATHER, JJ.
WALKER, Presiding Justice, for the Court:
This is an appeal from the Chancery Court of the First Judicial District of Hinds County, Mississippi, wherein the chancellor sustained appellee's amended petition for adoption of the minor children, Kristen Eve Petit and Dustin Patrick Petit, over objection of the natural father, Gene Petit. Aggrieved with the lower court's ruling, appellant has perfected his appeal to this Court assigning the following as error:
(1) The trial court erred in finding that the respondent had abandoned and deserted his minor children; and
(2) The trial court erred in finding that the respondent was unfit to properly rear and train his children.
Addie Lee Petit, the appellee and the natural mother of Kristen and Dustin, was granted a divorce on the grounds of adultery in February of 1980 after a seven-year marriage to Gene Petit. Mrs. Petit married John Holifield on August 31, 1980. The testimony did not bring forth his income or present employment although Mrs. Petit (Holifield) stated John Holifield is an ordained minister. On September 10, 1981, John filed his petition for the adoption of the minor children, Kristen and Dustin, which was joined in by Addie Holifield. An amended petition was filed January 19, 1982, alleging that Mr. Petit had abandoned or deserted his children and was otherwise unfit to rear or train them.
*876 At the time of trial Mr. Petit's support payments were over $7,000.00 in arrears. Under the divorce decree he was required to pay $500.00 per month. His last payment was received October 15, 1980. According to Mr. Petit he has not had the funds to pay child support. In 1980 he grossed $22,000.00 and after expenses had a taxable income of $1,500.00. In 1981 he grossed $24,603.00 with a taxable income of $299.00. He testified he has had a comfortable living but this meant he could only provide for his own food and lodging.
Mr. Petit, who has a Bachelor of Arts degree in business administration, has been employed as a professional wrestler for approximately ten years. His profession requires him to travel extensively. His earnings can range from $500.00 to $3,000.00 or $4,000.00 a week depending on the time and place of a wrestling match.
Testimony was adduced without objection that Mr. Petit left his wife and daughter at a time when Mrs. Petit (Holifield) was pregnant with their second child. He allegedly left with a woman named Pam Savelle who Mr. Petit acknowledged living with at the time of his divorce. He and Pam married December 20, 1980.
During the approximately one and one-half years since the divorce and the filing of the adoption petition, there have been few visits between the children and Mr. Petit. According to Mrs. Holifield it has been no more than five times that he has visited with the children. He was not granted visitation rights under the divorce decree and any visits were with Mrs. Holifield's consent. She testified that she only refused to allow him to see the children on one occasion. Mr. Petit was allowed to keep Kristen for one overnight visit and she was allowed to attend his wedding in Mississippi. The last time he saw the children before the filing of the petition was July of 1981. The petition was filed in September 1981. Mr. Petit has sent Kristen a birthday gift and has sent the children Christmas presents and has called their home on numerous occasions.
Mr. Petit testified that since July of 1981 he has lived in Liberty, Missouri. Prior to that he resided in Charlotte, North Carolina for a thirteen-month period. He claimed to have sent a package on August 19, 1981 with his return address to the children. When questioned whether or not she knew the children received the package in August, Mrs. Holifield said, "No, sir; I don't." Mr. Petit also testified he mailed two self-addressed envelopes to Kristen for her to send him some pictures which she had made. Mrs. Holifield did not recall Kristen receiving these envelopes.
Mr. Holifield testified that he desired to and was willing to raise Dustin and Kristen as his own. Mrs. Holifield, who suffers from Hodgkin's disease, wants to provide a stable home environment for the children. Should something happen to her she didn't want Mr. Petit "to come in and jerk them away when Dustin doesn't even know him."
Mr. Petit is desirous of building a relationship between himself and his children. He would like to acquire visiting rights with the children and felt he could care for them should something happen to Mrs. Holifield. The question of visitation rights was not raised on this appeal.
With regard to the adoption petition, the court held that Mr. Petit had abandoned and deserted the children to the extent that they should be adopted by Mr. Holifield; that their best interest would be served by granting the adoption; and that Mr. Petit was not a fit and suitable person to be a father to these children. He found him to be unfit on the basis that he was living in open adultery with his present wife for a long period of time. In granting the adoption the court also took into consideration Mrs. Holifield's illness and the fact that Mr. Holifield was willing to take the responsibility of raising the two children if something happened to her.
On appeal from the decree granting Mr. Holifield the right to adopt Kristen and Dustin, Mr. Petit asserts the chancellor erred in finding that he had abandoned or *877 deserted the children and also that he was unfit to properly raise them. We agree.
In order to sever the rights of a natural parent, the burden is upon the petitioner to show by clear and convincing evidence [see De La Oliva v. Lowndes County Dept. of Pub. Wel., 423 So.2d 1328 (Miss. 1983)] that the objecting parent has either abandoned or deserted the child or is mentally or morally or otherwise unfit to rear or train the child. Once that has been established, the best interest of the child is to be considered. See Ford v. Litton, 211 So.2d 871 (Miss. 1968).
The criterion for determination of unfit parent's rights are stated in Mississippi Code Annotated section 93-17-7 (Supp. 1983) as follows:
No infant shall be adopted to any person if either parent, after having been summoned to sign the petition for adoption, shall appear and object thereto before the making of a decree for adoption, unless it shall be made to appear to the court from evidence touching such matters that the parent so objecting had abandoned or deserted such infant or is mentally, or morally, or otherwise unfit to rear and train it, including, but not limited to, being within any of the grounds requiring termination of parental rights as set forth in subsections (2) and 3(a), (b), (d) or (e) of section 93-15-103 in either of which cases the adoption may be decreed notwithstanding the objection of such parent, first considering the welfare of the child, or children, sought to be adopted. Provided, however, the parents shall not be summoned in the adoption proceedings nor have the right to object thereto if the parental rights of the parent or parents have been terminated by the procedure set forth in sections 93-15-101 through XX-XX-XXX, and such termination shall be res judicata on the question of parental abandonment or unfitness in the adoption proceedings.
Several grounds which may be considered for termination of parental rights are set forth in pertinent part in Mississippi Code Annotated section 93-15-103(3) (Supp. 1983) as follows:
(3) Grounds for termination of parental rights shall be based on one or more of the following factors:
(a) A parent has deserted without means of identification or abandoned and make no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year; or
(b) A parent has been responsible for a series of abusive incidents concerning one or more children; or
(c) When the child has been in the care and custody of a of a licensed child caring agency for at least one (1) year, that agency had made diligent efforts to develop and implement a plan for return of the child to its parents, and:
(i) The parent has failed to exercise reasonable available visitation with the child; or
(ii) The parent, having agreed to a plan to effect placement of the child with the parent, fails to implement the plan so that the child caring agency is unable to return the child to said parent; or
(d) The parent exhibits ongoing behavior which would make it impossible to return the child to the parent's care and custody:
(i) Because the parent has a diagnosable condition unlikely to change within a reasonable time such as alcohol or drug addiction, severe mental deficiencies or mental illness, or extreme physical incapacitation, which condition makes the parent unable to assume minimally, acceptable care of the child; or
(ii) Because the parent fails to eliminate behavior, identified by the child caring agency or the court, which prevents placement of said child with the parent in spite of diligent efforts of the child caring agency to assist the parent; or
(e) When there is an extreme and deep-seated antipathy by the child toward the parent or when there is some other substantial erosion of the relationship between the parent and child which *878 was caused at least in part by the parent's serious neglect, abuse, prolonged and unreasonable absence, unreasonable failure to visit or communicate, or prolonged imprisonment.
We do not find the facts of this case support the conclusion that Mr. Petit abandoned or deserted his children.
In Ainsworth v. Natural Father, 414 So.2d 417 (Miss. 1982), we reiterated the definition of "abandonment" as importing any conduct on the part of the parent which evinces a settled purpose to forego all duties and relinquish all parental claims to the child. We further went on to define the verb "desert" as foresaking one's duty as well as a breaking away from or breaking off associations with some matter involving a legal or moral obligation or some object of loyalty. We noted that abandonment has to do with the relinquishment of a right or claim whereas desertion involves an avoidance of a duty or obligation.
Mr. Petit was not allowed visitation rights under his divorce decree. Although his visits with the children are very infrequent, he has not so totally shown that he wishes to "relinquish all parental claims to the children" constituting an abandonment of said children. It is true as noted by the chancellor that the phone calls made to the children's residence could have been to speak to Mr. or Mrs. Holifield and not to the children; however, in the same light the calls could have just as easily been made for the purpose of checking on the children's welfare. Because of the young age of these children and these infrequent visits Mr. Petit most likely does not have a close or father-like relationship with either child especially Dustin who was a small infant at the time of the divorce. Even though his attempts, feeble as they are, will not produce the relationship Mr. Petit seems to desire as the natural father, we cannot say that this alone is sufficient to constitute abandonment under our statutory and case law.
In applying the definition of desertion as found in Ainsworth, supra, Mr. Petit has clearly not fulfilled his obligation of paying child support. However, In Re Adoption of a Female Child, 412 So.2d 1175 (Miss. 1982), we found that failure alone to pay child support is insufficient to constitute abandonment. The natural father in that case was able to offer proof as to his inability to make the child support payments. As in the matter now before us, Mr. Petit, although able to support himself and his present wife, offered sufficient evidence to the court as to his inability to purge himself of the contempt charges against him. Based on this finding by the chancellor, we do not find either desertion or abandonment as a result of Mr. Petit's failure to pay his child support.
The chancellor found Mr. Petit unfit because of his adulterous relationship. In custody cases we have held that the fact that a custodial parent has cohabitated with a person who later became that parent's spouse to be insufficient to constitute a material change in circumstances requiring a change in custody. See Kavanaugh v. Carraway, 435 So.2d 697 (Miss. 1983). This same rule applies with equal force in adoption cases. The mere fact that a natural parent has had a prior adulterous relationship is insufficient to warrant a finding that the parent is unfit under our statutes whereby his parental rights may be severed. Mr. Petit did marry Pam Savelle and there was no evidence of continuing promiscuity.
Viewing the evidence before us in light of the above authorities, we are of the opinion that the conduct of Mr. Petit does not evince a settled purpose to forego all parental rights and relinquish all parental claim to these children. He does, however, come close and is "teetering" on the brink insofar as his duty to support the children is concerned. In fact, if the totality of the circumstances continue without improvement over a substantial period of time in the future, a court would be justified in decreeing an adoption over his protest. We are unable to say that the chancellor was manifestly wrong in holding that Mr. Petit was unable to support these children at the time of the hearing, although we *879 find that question to be extremely close. Mr. Petit needs to "tighten his belt" and live a little less comfortably and begin contributing the court-ordered child support for these children. He is hardly an ideal parent and perhaps not even the best parent for these children as between himself and Mr. Holifield, but under the evidence that we have before us, we are unable to say that the Holifields have proven by clear and convincing evidence that Mr. Petit has abandoned or deserted the children or that he is unfit within the meaning of the law.
For the above reasons, the judgment of the chancery court decreeing the adoption is reversed, the decree of adoption set aside and this cause rendered without prejudice.
JUDGMENT DECREEING THE ADOPTION IS REVERSED; THE ADOPTION SET ASIDE AND THIS CAUSE RENDERED WITHOUT PREJUDICE.
PATTERSON, C.J., BROOM, P.J., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.