GRIFFIN, Justice,
for the court:
This case, involving an adoption, comes to the Court from the Chancery Court of Pike County, which dismissed the petition for adoption. We affirm.
In December 1980, when J.D. was four months of age, her father K.D. and her mother D.D. divorced. Thereafter, in February 1983, D.D., having custody of J.D., married W.B. W.B. now seeks to adopt the child.
At trial, D.D.B. testified that K.D. called every three to six weeks, and visited on five occasions during 1981. This pattern continued in 1982, until October, when police arrested K.D. for possession of marijuana with intent to deliver. K.D. subsequently plead guilty.
As a result, D.D.B. refused to allow K.D. any visitation outside of her presence. In response, K.D. petitioned the chancery court for specific visitation rights and the parties agreed to three hours every other Saturday, at K.D.’s mother’s home. Additionally, K.D. was to contribute $100 per month toward the child’s support.
Thereafter, K.D. visited J.D. according to the terms of the court order. Working in New Orleans, he occasionally missed some Saturdays, but regularly requested more time with the child. Also, K.D. paid $350 pursuant to the court order, but since May 1983, he has contributed nothing toward J.D.’s support.
Finally, in December 1985, D.D.B. refused K.D. further ■ visitation. The next month, D.D.B. and W.B. filed for adoption.
In favor of their petition for adoption, D.D.B. and W.B. cite not only K.D.’s guilty plea, previously mentioned, but also the Mississippi Bureau of Narcotics’ search of his mobile home in June 1984, which uncovered marijuana, marijuana residue, and marijuana seeds. Yet, at the hearing, K.D. denied any connection with the marijuana. D.D.B. and W.B. also note K.D.’s failure to pay child support, his desertion from the United States Navy, and his sexual relations with at least three women, one of whom bore his illegitimate child.
K.D. answers that he was found not guilty of any crime relating to the search of his mobile home, that D.D.B. agreed to a suspension of child support payments until he had finished school, that his father’s impending death had prompted his desertion from the Navy, which granted him a General Discharge under Honorable Condition, that he has contributed $100 per month to the support of his illegitimate child, and that he is presently engaged to be married.
At the hearing, D.D.B. and W.B. contended that K.D. had abandoned or deserted his daughter. Miss.Code Ann. § 93-17-7 (Supp.1986) reads in part:
No infant shall be adopted to any person if either parent, after having been summoned, shall appear and object there *686 to before the making of a decree for adoption, unless it shall be made to appear to the court from evidence touching such matters that the parent so objecting had abandoned or deserted such infant or is mentally, or morally, or otherwise unfit to rear and train it, including, but not limited to, being within any of the grounds requiring termination of parental rights as set forth in subsections (2) and (3)(a), (b), (d) or (e) of Section 93-15-103 in either of which cases the adoption may be decreed notwithstanding the objection of such parent, first considering the welfare of the child, or children, sought to be adopted.
Also, Miss.Code Ann. § 93-15-103 (Supp 1986) reads in part:
(3) Grounds for termination of parental rights shall be based on one or more of the following factors:
(a) A parent has deserted without means of identification or abandoned and made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year; or
* * # * * *
(d) The parent exhibits ongoing behavior which would make it impossible to return the child to the parent’s care and custody:
* * # # * *
(ii) Because the parent fails to eliminate behavior, identified by the child caring agency or the court, which prevents placement of said child with the parent in spite of diligent efforts of the child caring agency to assist the parent; ....
In Ainsworth v. Natural Father, 414 So.2d 417, 420 (Miss.1982), the Court distinguished abandonment from desertion, stating, “It would appear then, that abandonment has to do with the relinquishment of a right or claim, whereas desertion involves an avoidance of a duty or obligation.” See also, Bryant v. Cameron, 473 So.2d 174, 178 (Miss.1985); Petit v. Holifield, 443 So.2d 874, 878 (Miss.1984). The Court then added that the definition of abandonment found in Wright v. Fitzgibbons, 198 Miss. 471, 477-8, 21 So.2d 709, 710 (1945) applied to desertion, as well: “Abandonment imports any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claims to the child.” Ainsworth, 414 So.2d at 420.
Here, there is evidence that K.D. visited his daughter according to the terms of the court order, calling in advance to cancel, if necessary, repeatedly requested increased visitation, offered to add J.D. to his health insurance coverage, and gave the child presents on her birthday and at Christmas. Indeed, the only evidence to support the contention of abandonment or desertion relates to K.D.’s failure to pay child support. Yet, this Court has previously held that “constant arrearages in child support payments” do not constitute abandonment or desertion under the definition, quoted above. In re Adoption of a Female Child, 412 So.2d 1175, 1178 (Miss.1982). See also, Petit, 443 So.2d at 878.
D.D.B. and W.B. also contended that K.D. was morally unfit to rear and train the child. Yet, there is no evidence that K.D. ever exposed his daughter to illegal or immoral conduct during their visits with one another. Even D.D.B. acknowledges this point. As the chancellor noted, K.D., out of school and with a good job, “has hopefully turned his life around.”
In particular, K.D.'s commission of a crime is, alone, insufficient to find him morally unfit to rear and train his child, especially where rehabilitation is evident. See Matter of Yarber, 341 So.2d 108, 109-110 (Miss.1977); Mayfield v. Braund, 217 Miss. 514, 525, 64 So.2d 713, 717 (1953).
Also, in Kavanaugh v. Carraway, 435 So.2d 697, 701 (Miss.1983), a child custody case, the Court noted that cohabitation by the custodial parent, in itself, is insufficient to modify a custody order, absent a showing of “substantial detrimental effect.” This same rule applies in adoption cases. Petit, 443 So.2d at 878. Here, it is important to note that (1) K.D. is not the custodial parent, and (2) there is no evidence indicating any detrimental effect on J.D. In fact, there is evidence to suggest that J.D. *687 has no knowledge either of her illegitimate half brother or of her father’s live-in girlfriends.
Consistent with the above, the chancellor was not manifestly in error, when he found neither abandonment nor such immoral conduct as to make K.D. unfit.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.