MILLS, Justice,
dissenting:
¶ 14. I disagree with the majority’s conclusion that there is not clear and convincing evidence to support the termination of M.L.B.’s parental rights. A thorough reading of the record demonstrates that the chancellor considered all of the proper and requisite legal factors and made a correct decision. Further, we must remember the standard under which we review a chancellor’s findings. This Court will not disturb findings of the chancellor unless the chancellor was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Tinnin v. First United Bank, 570 So.2d 1193, 1194 (Miss.1990). Where there is substantial evidence to support the chancellor’s findings, we are without the authority to disturb his conclusions, although this Court might have found otherwise as an original matter. In re Estate of Harris, 539 So.2d 1040, 1043 (Miss.1989). I assert that the chancellor did not commit manifest error or apply an erroneous legal standard. The record evinces clear and convincing evidence that M.L.B. allowed her relationship with her children to erode substantially. Termination of her parental rights under Miss.Code Ann. § 93 — 15—103(3)(e)(1994) was warranted. The majority, of course, finds otherwise, relying heavily on our decision in Petit v. Holifield, 443 So.2d 874 (Miss.1984). In Petit, the mother of two minor children and her new husband petitioned to have the new husband adopt the children. Id. at 875. The petition alleged that Gene Petit, the children’s natural father, had abandoned or deserted his children and was otherwise unfit to rear or train them. Id. It was established that Mr. Petit had visited his children only five times during an eighteen month period but called his children on numerous occasions and sent birthday and Christmas gifts. Id. at 876. It is also important to note that Mr. Petit’s occupation required him to be away from home a substantial amount of time and that he resided outside of the state for all but four months since his divorce from the children’s mother. Id. There was also testimony suggesting that Mr. Petit had indicated to his children where he resided at the time by sending his older child two self-addressed envelopes. Id. The chancellor in Petit expressly based his finding that Mr. Petit was morally unfit to be a father to his children on the fact that he had openly lived in adultery with his present wife and that the new *1030 husband was willing to take the responsibility of raising the children if something happened to their natural mother. Id. This Court rightly found that the chancellor erred in basing his decision, even in part, on Mr. Petit’s adulterous relationship: “The chancellor found Mr. Petit unfit because of his adulterous relationship. In custody cases we have held that the fact that a custodial parent has cohabitated with a person who later became that parent’s spouse to be insufficient to constitute a material change in circumstances requiring a change in custody. This same rule applies with equal force in adoption cases.” Id. at 878 (citations ommitted). This Court went on to conclude that Mr. Petit’s actions or inaction as a parent did not demonstrate abandonment, desertion or moral unfitness. Id. However, it is abundantly clear that we reversed the chancellor’s finding primarily because of his error in basing Mr. Petit’s moral unfitness on his adulterous relationship. Further, this Court stated that Mr. Peitit “does ... come close and is teetering on the brink” of warranting a termination of his parental rights. Id. Clearly, if Mr. Petit was teetering on the brink then M.L.B. has slipped over the edge.
¶ 15. The record contains clear and convincing evidence that M.L.B abandoned, deserted or allowed her relationship to erode substantially with her children. The 1992 divorce decree stipulated that M.L.B. would have reasonable visitation rights but in no event would M.L.B. exercise her visitation rights in the presence of J.B., her boyfriend who was a known drunkard and reputedly violent person, who M.L.B. stated had beaten her and spent time in the penitentiary for assaulting a police officer. Nevertheless, M.L.B. continued to date this man and eventually married him even with the knowledge that he served as an impediment to her maintaining a meaningful relationship with her children. Testimony revealed that M.L.B disappeared for a period of time and that even her family did not know where she was. Further, there was testimony that M.L.B. did not visit or see her children for a period of 14 months, though this was disputed. At any rate, M.L.B. exercised her visitation rights very infrequently, spending only short periods of time with them when she did visit, evincing a general apathy toward her children. Further, the children’s father testified that the children were “balls of nerves” after seeing M.L.B. M.L.B.’s attempts to contact her children by phone curiously were usually made to their father’s business when she surely knew that the children were in school. M.L.B. claimed that for a while she did not know the home phone number. M.L.B. never sent her children birthday or Christmas cards. There was testimony indicating that M.L.B attempted to give the children Christmas presents but that she was unsuccessful. At one point, by M.L.B’s own admission she returned some Christmas presents that she had originally bought for the children. Finally, there was evidence that the children referred to their father’s second wife with maternal names.
¶ 16. The chancellor found that M.L.B. had allowed her relationship with her children to erode substantially and, accordingly, that her parental lights should be terminated under Miss.Code Ann. § 93-15-103(3)(e)(1994). I do not think that the chancellor’s determination can be said to be an abuse of discretion or manifest error. Therefore, I must respectfully dissent.
SMITH, J., JOINS THIS OPINION.