CHANDLER, J.,
for the Court.
¶ 1. Following the death of her daughter, Elizabeth Wiley filed a petition to appoint, a guardian and sought custody of her daughter’s children. The Chancery Court of Grenada County awarded custody of the children to Ms. Wiley, the maternal grandmother. The children’s father, Rickie Brown, was granted visitation and was ordered to pay child support. Mr. Brown appeals, raising the following issue:
WAS THE TRIAL COURT MANIFESTLY ERRONEOUS IN GRANTING CUSTODY TO THE CHILDREN’S MATERNAL GRANDMOTHER?
*606 ¶ 2. Finding that the chancellor applied the incorrect legal standard, we reverse and remand.

FACTS

¶ 3. In July of 1998, Aretha Brown (“Ms. Brown”), a sickle cell anemia patient, moved to Grenada, Mississippi, with her two children. She moved to Mississippi from Philadelphia, Pennsylvania, to be near her mother due to her financial difficulties and to be in a warmer climate for her illness. Her estranged husband and father of her children, Rickie Brown (“Mr. Brown”), stayed in Philadelphia. Ms. Brown died on October 28, 2002. On October 30, 2002, Ms. Brown’s mother, Elizabeth Wiley, filed a petition to appoint herself as guardian of her daughter’s children and to grant herself custody. On November 1, 2002, Mr. Brown returned to Mississippi, requested custody of his children, and refused to leave the state without taking his children with him. On November 4, 2002, the chancery court granted a temporary restraining order prohibiting Mr. Brown from taking away the children or removing them from the Grenada School District.
¶ 4. At the request of both parties, the case was decided quickly, and a final hearing was held on December 23, 2002. On January 13, 2003, the court entered judgment and vested permanent and physical custody of the children with Ms. Wiley. The judgment awarded Brown “reasonable and liberal visitation” with his children and ordered him to pay $615 per month. Brown was also granted six weeks of uninterrupted summer visitation. Mr. Brown filed a motion to reconsider on January 23, 2003. The chancellor did not change its earlier judgment which gave Ms. Wiley legal and physical custody of Mr. Brown’s children.

ANALYSIS

WAS THE TRIAL COURT MANIFESTLY ERRONEOUS IN GRANTING CUSTODY TO THE CHILDREN’S MATERNAL GRANDMOTHER?
¶ 5. At the hearing, the parties and trial court agreed that the leading case regarding the custody rights of a natural parent is stated in Sellers v. Sellers, 638 So.2d 481 (Miss.1994). The Mississippi Supreme Court stated:
The well-settled rule in a child custody case between a natural parent and a third party is that it is presumed that the best interest of the child will be preserved by being in the custody of the natural parent. In order to overcome this presumption there must be a clear showing that (1) the parent has abandoned the child, (2) the conduct of the parent is so immoral as to be detrimental to the child, or (3) the parent is mentally or otherwise unfit to have custody of the child.
Id. at 486 (citing Hale v. Hood, 313 So.2d 18, 19-20 (Miss.1975); Rodgers v. Rodgers, 274 So.2d 671 (Miss.1973)).
¶ 6. Applying the three-factor Sellers test, the chancellor found that Mr. Brown had not abandoned his children, that he demonstrated sufficient moral fitness, and that he was mentally fit to take care of his children. Ultimately, he decided that Mr. Brown was not entitled to custody on the grounds that he was otherwise unfit. In deciding that Mr. Brown was otherwise unfit, the chancellor considered three factors. First, the chancellor noted that Mr. Brown failed to pay his child support in a consistent manner in the time that his children were separated from him, as evidenced by the fact that he was more than $3,000 behind in his payments as of the date of the hearing. Second, the chancel *607 lor found that Mr. Brown was unreasonably absent from his children, as shown by the fact that he had seen them only once in the prior four year period and otherwise communicated with them only by telephone. Third, the chancellor found that Mr. Brown had failed to provide emotional support for his children while Ms. Brown suffered through her illness.
¶ 7. The issue before us is unique. There has never been a case in our jurisprudence in which the lower court decided to deny custody to a natural father solely on the grounds that he is otherwise unfit. Our review of the chancery court’s decision analyzes whether the chancellor appropriately applied the law to the facts. A chancery court’s interpretation and application of the law is reviewed under a de novo standard. Madison County v. Hopkins, 857 So.2d 43, 47(¶ 11) (Miss.2003); Tucker v. Prisock, 791 So.2d 190, 192(¶ 10) (Miss.2001); In re Carney, 758 So.2d 1017, 1019(¶ 8) (Miss.2000).
¶ 8. We begin our analysis by examining Mississippi Code Annotated § 93-15-103(3) (Supp.2003), which lists grounds for termination of parental rights. Although the chancellor did not terminate Mr. Brown’s parental rights, the statute is helpful for us to use to decide what grounds of “otherwise unfitness” a court can consider in denying custody. The factors the statute lists includes abandonment; lack of contact with a child under the age of three for a period of six months or a child three years or older for a period of one year; episodes of abusive incidents towards the child; substance addiction, severe mental deficiencies or mental illness, or extreme physical incapacitation making the parent unable to assume minimally acceptable care of the child; extreme and deep-seated antipathy by the child toward the parent or when there is some other substantial erosion of the relationship between the parent and child caused at least in part by the parent; and the parent’s conviction of rape or other sexual misconduct against any child. Abandonment, moral unfitness, and mental unfitness are all included in this statute; therefore, we find that a reading of this statute is helpful in deciding what types of factors a court should consider in deciding whether a natural parent is otherwise unfit for taking care of his children. In fact, courts have used exactly the same language explaining the burden of proof in termination of parental rights cases as they have used in explaining the rights of a natural parent to have custody over a third party: “In termination of parental rights cases, the petitioner must prove that the natural parent either abandoned or deserted the child or is mentally or morally or otherwise unfit to rear or train the minor child.” N.E. v. L.H., 761 So.2d 956, 961(¶ 11) (Miss.Ct.App.2000) (citing Petit v. Holifield, 443 So.2d. 874, 877 (Miss.1984)).
¶ 9. A reading of Mississippi Code Annotated § 93-15-103(3) shows that the legislature intended to create a strong presumption in favor of the natural parent retaining his parental rights, including the right-to custody. We find that denial of custody to a natural parent in favor of a third party should be granted only when there is a clear showing that the natural parent has relinquished his parental rights, that he has no meaningful relationship with his children, or that the parent’s conduct is clearly detrimental to his children.
¶ 10. The chancellor was in error in deciding that Mr. Brown had not abandoned his children but then deciding that he was unfit to care for his children in part because of his failure to stay current on his child support. The Mississippi Supreme Court has previously and consistently held that “ ‘constant arrearages in child sup *608 port’ do not constitute abandonment or desertion.” In Interest of J.D., 512 So.2d 684, 686 (Miss.1987) quoting In re Adoption of A Female Child, 412 So.2d 1175, 1178 (Miss.1982); (citing Petit v. Holifield, 443 So.2d 874, 878 (Miss.1984)). We find that a failure to stay current on child support goes to whether a natural parent has abandoned his child and cannot be a factor in determining whether a natural parent is otherwise unfit. The chancellor understood that proving abandonment is extremely difficult, and he cited Smith v. Watson, 425 So.2d 1030, 1035 (Miss.1983), to substantiate this understanding:
[W]here a parent, without just cause or excuse, forsakes or deserts his infant child for such a length of time, and under such circumstances, as to show an intent to shirk or evade the duty, trouble or expense of rearing it, or a callous indifference to its wants, or a reckless disregard for its welfare, he or she is guilty of such abandonment of it as to bar his or her right thereafter to reclaim its custody from any person who may have ministered to and protected it during such period of desertion.
We find that in deciding that a failure to stay current on child support constituted grounds of unfitness, the chancellor misapplied the principle of abandonment as defined by the Mississippi Supreme Court.
¶ 11. The chancellor also decided that Mr. Brown was unfit to care for his children because he saw them only once in the four years that they had lived in Mississippi, with a planned trip to Grenada for the Thanksgiving 2002 holidays. In Mr. Brown’s sole visit with his children, Mr. Brown visited them in Mississippi for a week, and his children stayed with him in Philadelphia for about a month, in June and July of 2000. Once again, we find that the chancellor misapplied the abandonment standard. We also find on these facts that Mr. Brown’s infrequent physical visits cannot be used as a factor in deciding that Mr. Brown was otherwise unfit to care for his children. In this situation, Mr. Brown’s frequent telephone calls to his children show the closeness of the relationship Mr. Brown had with his children. As a bus driver who had difficulty earning a decent income and who was physically far away from his children, Mr. Brown simply did not have the time or money to make frequent visits from Pennsylvania to Mississippi. Both of his children testified that the telephone calls were frequent and that Mr. Brown called them about once a week. In addition, the fact that the chancellor granted Mr. Brown liberal visitation shows that the chancellor was satisfied that Mr. Brown was a fit person to have custody of his children. Thomas v. Purvis, 384 So.2d 610, 613 (Miss.1980).
¶ 12. The chancellor also held that Mr. Brown failed to show proper emotional support for his children as Ms. Brown suffered through her illness and died. We find this holding to be erroneous as a matter of fact. The chancellor’s holding was based on the fact that Ms. Wiley was the person taking care of the children when Ms. Brown spent long periods of time in the hospital. Even though Ms. Wiley’s care and concern for her grandchildren is commendable, Mr. Brown was unable to take part in his children’s day-today activities because he was far away from his children. We also find nothing in the record showing that Mr. Brown’s failure to provide emotional support affected his relationship with his children in any way. Mr. Brown’s daughter, Ebony, testified that she loves her daddy and that she believes her daddy loves her. Mr. Brown’s son, Rickie, Jr., testified that he had a good time during his June and July 2000 visit to Philadelphia and that he stayed in close contact with his father after *609 this visit. There was no indication by either child that they were angry with their father for not doing more for them while their mother was ill or after their mother’s death. When Mr. Brown came to Mississippi after Ms. Brown’s death, Mr. Brown saw his children but later had to stop seeing them because the court placed a restraining order on him. We are compelled to reverse the chancellor’s finding that Mr. Brown failed to provide proper emotional support for his children, seeing no evidence in the record to support this finding. Crow v. Crow, 622 So.2d 1226, 1227 (Miss.1993); Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990)
¶ 13. The chancellor decided that Mr. Brown was not entitled to custody because he was otherwise unfit as a parent. Although a court is within its discretion to deny custody to a natural parent based on miscellaneous grounds, it must also appreciate the seriousness of granting custody to a third party over a natural parent. In awarding custody to a third party, the Mississippi Supreme Court has stated the natural parent presumption as early as the year 1900: “[Children] must and ought to be subject to the custody and control of those who are immediately responsible for their being, for the reason that by nature there has been implanted in the human heart those seeds of parental and filial affection that will assure to the infant care and protection in the years of its helplessness .... that the primary object is the interest of the child, the presumption of the law is that its interest is to be in the custody of its parent.” Hibbette v. Baines, 78 Miss. 695, 704, 29 So. 80, 81 (1900) (quoting Weir v. Marley, 99 Mo. 484, 12 S.W. 798, 800 (1890)). This presumption is overcome only by clear and convincing evidence. In overcoming this presumption, especially when making the determination on miscellaneous grounds, a court should look for factors that indicate a natural parent’s absence of a meaningful relationship with his child or behavior of the parent that is clearly detrimental to his child. In this case, the chancellor denied custody to Mr. Brown due to his inability to pay his child support in full and his inability to visit his children on a regular basis. In doing so, the chancellor was, in effect, denying Mr. Brown custody on the grounds of abandonment while simultaneously holding that Mr. Brown had not abandoned his children.
¶ 14. Even though Mr. Brown’s children are well cared for by their grandmother in Mississippi, a finding of unfitness is necessary to award custody to a third party over a natural parent. This finding .is necessary before the court can decide the best interests of the children. In re Custody of M.A.G., 859 So.2d 1001, 1004(¶7) (Miss.2003). We find that the chancellor incorrectly applied the law in finding that Mr. Brown- was an unfit parent. We also find that the chancellor’s holding that Mr. Brown was not emotionally available for his children is unsupported by the record.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF GRENADA COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., MYÉRS, GRIFFIS, BARNES AND ISHEE, JJ„ CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION.