CARLSON, Justice,
for the Court.
¶ 1. Aggrieved by the chancery court’s termination of parental rights to his minor child in an adoption proceeding, Wilbur Andrew Simpson[1] appeals to us. Finding no error, we affirm the final judgment of the Chancery Court of Leake County.
FACTS AND PROCEEDINGS IN THE TRIAL COURT
¶ 2. While in high school, Wilbur Andrew Simpson (Andy) met Ramona Lois Kim-mons (Lois). Soon after they began dating, Lois became pregnant with their child, and Marion Samuel Kimmons (Sam) was thereafter born. At the time of Sam’s birth, Andy was eighteen years old, and Lois was twenty years old. The relationship between Andy and Lois soured, and Lois began dating Bob Beckett, whom she eventually married; however, they divorced a couple of months later. Lois then met Alexander Garner (Alex), a man sixteen years older than Lois, and after six months of dating, they married in September 2003. Since Alex’s marriage to Lois, Alex has raised Sam as his own son in their marital home. Sam has considered Alex to be his father for approximately two years. On June 1, 2005, Lois and Alex filed a complaint for adoption in the Chancery Court of Leake County.
¶ 3. On June 29, 2005, the chancellor entered an order appointing Lynn Dor-man, a local attorney in Carthage, as Guardian Ad Litem. On August 11, 2005, Dorman filed her detailed eight-page report. A reading of the report reveals that Dorman conducted individual interviews with Sam, Lois, Alex, Andy, Marion and Lenora Kimmons (Sam’s maternal grandparents), Andrew and Laura Simpson (Andy’s father and step-mother), and Clara Simpson (Andy’s paternal grandmother). Dorman also discussed in detail in her report the statutory factors concerning adoption and termination of parental rights. Dorman concluded her report by stating:
This is a very difficult recommendation to make to this Court and is one that I do not take lightly. I have given this case much thought and have prayed for guidance in reaching a recommendation that will ultimately serve the best interest of the minor child. All other considerations are second at best. I believe that a parent’s rights in the life of a child is one of the most precious legal rights one can enjoy and is of fundamental importance, however, Andy has not demonstrated a willingness to take on the role and responsibility of a parent by his past actions. The only attempt that I can ascertain was the current filing of his petition occurring only after the Plaintiffs’ Petition for Adoption. He stated that he didn’t know why he had not pursued this action sooner, but that he had grown up since that time and had bettered himself. I can certainly appreciate his admission of shortcomings in the past as to his responsibility as a father, however, I still must consider ultimately the best interest of this child as the primary factor in making my recommendation.
*33 Alexander L. Garner assumed the role of father to Sam when he married Lois and has been that father for nearly two years. It is my honest and true belief that Alex would continue to provide Sam with the love and care that he needs from a father figure and that it would be in the best interest of the minor child for Alex to be allowed to adopt said minor child and that it would be in the best interest of the minor child for the parental rights of Wilbur Andrew Simpson to be terminated.
(Emphasis in original).
¶ 4. On August 24, 2005, a trial on the merits was held on the complaint for adoption, Chancellor William J. Lutz, presiding. Lois and Alex were present and represented by counsel, and Andy was present and represented by counsel. At this trial, the chancellor received sworn testimony from Lynn Dorman, Andy Simpson, Alex Garner, Lois Garner, Laura Simpson, Clara Simpson, Catherine Burns, and Belinda Aultman.[2]
¶ 5. At the conclusion of the trial, the chancellor issued a bench opinion granting the petition terminating Andy’s parental rights and also granting the petition of Alex and Lois to adopt Sam.[3] At the conclusion of his bench opinion, the chancellor informed the parties and counsel that he would in due course issue a written opinion and final judgment consistent with his bench opinion. On November 8, 2005, Chancellor Lutz entered a detailed, seven-page written opinion, followed by the entry of a final judgment consistent with his opinion. It is obvious from reading Chancellor Lutz’s written opinion, that by the time of the writing of his opinion, he had access to the court reporter’s transcript of the trial of August 24, 2005. Chancellor Lutz’s written opinion contains several quotes from the transcript, followed by references to the page number and line number of the transcript. Chancellor Lutz concluded his written opinion by stating:
The Court finds by clear and convincing evidence that Andy Simpson failed to attempt and did not make contact with his child Sam, for a period of over one (1) year. The Court further finds by clear and convincing evidence that there has been a substantial erosion of the relationship between Andy Simpson and Sam, which was caused by Andy Simpson’s prolonged and unreasonable absence and his unreasonable failure to visit and communicate. The Court, therefore, concludes that it is in Sam’s best interest that the parental rights of Andy Simpson be and are hereby terminated.
¶ 6. Andy filed a motion to set aside the judgment, or alternatively, to grant a new trial, which was in due course denied by an order entered by the chancellor. Andy then perfected his appeal to this Court, claiming as the sole error the chancellor’s misapplication of the law in terminating Andy’s parental rights with Sam.
*34 DISCUSSION
¶ 7. The chancellor’s findings of fact concerning the termination of parental rights are viewed under the manifest error/substantial credible evidence standard of review. K.D.F. & J.C.F. v. J.L.H., 933 So.2d 971, 975 (Miss.2006) (quoting Vance v. Lincoln County Dep’t of Pub. Welfare, 582 So.2d 414, 417 (Miss.1991)). Therefore, we examine “whether credible proof exists to support the chancellor’s finding of fact by clear and convincing evidence.” Id. (citing S.N.C. v. J.R.D., 755 So.2d 1077, 1080 (Miss.2000)). That being said, “[i]t is not this Court’s role to substitute its judgment for the chancellor’s.” Id. (citing Hensarling v. Hensarling, 824 So.2d 583, 587 (Miss.2002)).
¶ 8. Andy Simpson argues that the trial court did not apply the proper law when it terminated his parental rights. Specifically, Andy asserts that the trial court is required to use the “totality of the circumstances” test when determining whether to sever Andy Simpson’s parental rights. On the other hand, Lois and Alex Garner contend that under Miss.Code Ann. § 93-15-103(3) (Rev.2004), “grounds for termination of parental rights shall be based on one or more of the following factors,” and that a single factor may thus be outcome-determinative.
¶ 9. Miss.Code Ann. § 93-15-103 sets out the grounds for involuntary termination of parental rights. Along with this statutory provision, a chancellor must also look to established case law to determine whether to sever a natural parent’s rights and allow a contested adoption. In his very detailed opinion, the chancellor specifically explained his reasoning in determining to terminate the parental rights of Andy Simpson and to permit Alex Garner to adopt Sam Kimmons. The chancellor expressly stated in his written opinion, inter aha:
The grounds for involuntary termination of parental rights are statutory and found in Mississippi Code § 93-15-103. Mississippi Code § 93-15-103 states in part, “(3) Grounds for termination of parental rights shall be based on one or more of the following factors: (b) A parent has made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year or (f) When there is an extreme and deep-seated antipathy by the child toward the parent or when there is some other substantial erosion of the relationship between the parent and child which was caused at least in part by the parent’s serious neglect, abuse, prolonged and unreasonable absence, unreasonable failure to visit or communicate, or prolonged imprisonment.
[[Image here]]
The Court is clearly convinced from the testimony of Andy Simpson, Laura Simpson and Lynn Dorman, the Guardian Ad Litem, that Andy had no intention of seeking visitation or paying support until his life was on track. No testimony was presented that Andy went to Laura Simpson and said “please call Lois to see if I can have visitation next weekend.” Rather, Laura Simpson took it upon herself to try to continue to have contact with Sam. Laura Simpson selected, purchased and delivered Christmas presents to Sam in 2004 and 2005. These were not gifts from Andy. The Court is clearly convinced that Laura Simpson sought visitation for herself and if Andy was able to visit at the same time that was fine. Laura Simpson did not attempt to schedule visitation with Sam for the sole purpose of visitation with Andy.
*35 Andy’s top priority was to start and finish college. Only after Andy had completed college did he have any intention of seeking visitation or supporting Sam. Andy made the conscious decision with the help of his father and stepmother to put off seeking visitation and paying support until he got out of school and had a job. Andy was not willing to accept a little hassle or inconvenience to have a relationship with or even visit with Sam. Instead, Andy was willing to stop having any contact with Sam until he completed his two (2) years at East Central Community College. Andy and all of Andy’s witnesses testified that the only reason Andy did not pursue his parental rights with Sam was financial. Andy had to finish college, get a job; and, then, when he could afford it, he would exercise his parental rights.
(Emphasis in original). With that background in mind, the chancellor determined that Andy missed out on probably two of the most important years of Sam’s life and this caused a substantial erosion in Andy’s relationship with Sam.
¶ 10. In order to sever a natural parent’s parental rights, a two-prong test outlined in Petit v. Holifield, 443 So.2d 874, 877 (Miss.1984), must be satisfied. First, the petitioner must establish by “clear and convincing evidence that the objecting parent has either abandoned or deserted the child or is mentally or morally or otherwise unfit to rear or train the child.” Id. Once the first prong has been satisfied, the court must consider the second prong: the best interest of the child. Id. “The best interest of the child is a polestar consideration in the granting of any adoption,” and “this Court has never allowed termination of parental rights only because others may be better parents.” In re V.M.S., 938 So.2d 829, 835-36 (Miss. 2006) (citing M.L.B. v. S.L.J., 806 So.2d 1023, 1029 (Miss.2000) (quoting In re Adoption of J.J.G., 736 So.2d 1037, 1038 (Miss.1999))).
 ¶ 11. Clearly, the chancellor determined that Alex and Lois Garner proved by clear and convincing evidence the first prong of Petit. Andy Simpson’s continued absence from Sam’s life for a period of at least two years, as testified to by Andy, not only satisfied by clear and convincing evidence the provisions of § 93-15-103(3)(b), but the chancellor also determined that § 93-15-103(3)(f) was met. The legislature enacted § 93-15-103(3) as guidance for the courts to consider several grounds in making a determination as to whether to terminate parental rights. The clear language of the statute also demonstrates to us that only one of the enumerated grounds need to be satisfied in order to justify terminating a natural parent’s rights. Although, “under Mississippi law a strong presumption exists that the natural parent should retain his or her parental rights,” we are of the firm opinion based on the record before us that the chancellor did not commit manifest error by terminating the parental rights of Andy Simpson. In re V.M.S., 938 So.2d 829, 834-35 (Miss.2006).
¶ 12. Since the chancellor, consistent with the report and finding of the Guardian Ad Litem, determined that Andy Simpson is unfit to raise Sam, the second prong of Petit must be examined. Again, from the record before us and the applicable law, we have no doubt that the chancellor did not commit manifest error in finding that the best interest of the child was served by allowing Alex to adopt Sam. Alex, a mature man at forty years of age at the time of the trial, has graciously cared for Sam as his own son for the past two years. He spends time with Sam by taking him hunting and fishing. Additionally, Alex feeds, clothes, and cares for *36 Sam. Alex has demonstrated that he is an excellent father figure, and there is every indication that he intends to always “be there” for Sam. Thus, in applying “the manifest error/substantial credible evidence standard of review,” we are firmly convinced that the chancellor committed no error in the entry of his opinion and final judgment terminating Andy’s parental rights and permitting Alex to adopt Sam.
CONCLUSION
¶ 13. For the reasons stated, the Leake County Chancery Court’s final judgment terminating Andy Simpson’s parental rights is affirmed.
¶ 14. AFFIRMED.
SMITH, C.J., WALLER, P.J., DIAZ, EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. COBB, P.J., NOT PARTICIPATING.

. Since this case involves an adoption proceeding containing sensitive information, we are using pseudonyms to protect the true identities of the natural and adopting parents, the minor child, and all relatives.

. Catherine Bums is Andy’s aunt. Belinda Aultman is also Andy’s aunt.

. In his bench opinion wherein he explained his reasoning in concluding to grant the requested relief to Alex and Lois, Chancellor Lutz noted that even though there had never been an issue of paternity, Andy, who up to that point had unquestionably been deemed to be the natural father of Sam, on cross-examination by the attorney for Alex and Lois, engaged in this colloquy: "Q. Are you the natural father of Sam Kimmons? A. Yes, sir, I believe. I haven't had a test. Q. You believe you are or you are? A. Yes, I am. I just haven’t had the DNA test.” The chancellor opined from the bench that ''[f]or someone who is trying to be a dad and trying to claim his son, why would someone — there even be a possible qualifier, possible caveat in his mind?”