68 So.3d 748 (2011)
In the Interest of Minors K.D.G. II and R.C.G.
K.D.G., Appellant
v.
Winston County Department of Human Services, by Barbara Proctor, Social Services Director, and K.D.G. II and R.C.G., Minors, by and through their next friend, Barbara Proctor, Appellees.
No. 2010-CA-00231-COA.
Court of Appeals of Mississippi.
August 2, 2011.
*749 David E. Bane Jr., Louisville, attorney for appellant.
Office of the Attorney General by Katherine Jane Caldwell, attorney for appellees.
*750 Before LEE, C.J., MYERS and MAXWELL, JJ.
MAXWELL, J., for the Court:
¶ 1. For over six years, KDG's two minor sons had been in the custody of the Winston County Department of Human Services (DHS), while KDG had been in and out of prison. After KDG failed in 2008 to comply with a plan to reunite him with his sons and did not visit them for over a year, DHS petitioned for termination of his parental rights. The Winston County Chancery Court granted termination on two statutory grounds  (1) KDG's failure to contact his sons for over a year and (2) the substantial erosion of the relationship between KDG and his sons.
¶ 2. KDG appeals. He argues DHS failed to prove by clear and convincing evidence that grounds for termination existed. He also claims the chancery court failed to consider whether alternatives to termination would have been in his sons' best interests. We find no error in the chancery court's decision to terminate his parental rights. Therefore, we affirm.

FACTS
¶ 3. KDG was the legal father of both KDG II, born April 2000, and RCG, born September 2002.[1] In February 2002, before RCG was born, KDG went to prison. In July 2003, the Winston County Youth Court determined the children were abused and neglected. It ordered they be placed in the custody of DHS, where they have remained for over six years. While both children had special emotional and psychological needs, KDG II's needs have required placement at a treatment facility.
¶ 4. In November 2005, KDG was released on parole. In March 2006, he returned to prison for a parole violation. He was re-released in November 2006 and did not return to prison until May 2009.
¶ 5. In 2008, KDG requested custody of his sons but questioned the paternity of RCG. In July 2008, KDG underwent a court-ordered paternity test, which proved KDG was RCG's biological father. KDG briefly saw RCG during the DNA test.
¶ 6. Also in July 2008, the youth court issued a permanency order intended to reunite KDG with his sons. The permanency order required KDG to enter into a service agreement with DHS, schedule visitation with both children, and pay $100 a month in child support. It also ordered KDG to undergo psychological evaluation.
¶ 7. The youth court held a review hearing on October 15, 2008. KDG did not attend. The youth court found KDG had not entered into a service agreement, had not made any efforts to visit his children, and had not paid any child support. KDG also had not undergone a psychological evaluation.
¶ 8. In April 2009, DHS filed a petition to terminate. In May 2009, KDG returned to prison. In November 2009, the youth court issued a bench ruling finding that it was in the best interests of the children that KDG's parental rights be terminated. The youth court found KDG had not made any contact with either child in over a year. KDG did have some contact with DHS about his employment status and current address  but never to schedule visitation with his sons. Although KDG testified he had worked several jobs, he had not paid any child support or attempted to provide any care for his sons. The youth court also considered KDG's criminal history, including a conviction for a violent felony.
*751 ¶ 9. The youth court found, by clear and convincing evidence, that DHS had proved: (1) KDG had no contact with either child in over a year, and (2) there had been a substantial erosion of his relationship with both children so that "they do not even know him."
¶ 10. The chancery court incorporated the youth court's bench ruling into a final judgment entered December 4, 2009. The chancellor found it was in the best interests of the children that KDG's parental rights be terminated so that DHS could create a stable and permanent plan for the children's future and allow both children to become be eligible for adoption.
¶ 11. KDG timely appealed.

LAW AND DISCUSSION

I. Standard of Review
¶ 12. When reviewing the termination of parental rights to a minor child, we look for "whether credible proof exists to support the chancellor's finding of fact by clear and convincing evidence," W.A.S. v. A.L.G., 949 So.2d 31, 34 (¶ 7) (Miss.2007) (quoting K.D.F. v. J.L.H., 933 So.2d 971, 975 (¶ 14) (Miss.2006)), keeping in mind "the best interest of the child is the paramount consideration." In re V.M.S., 938 So.2d 829, 832(¶ 6) (Miss.2006) (citing Lauderdale County Dep't of Human Servs. v. T.H.G., 614 So.2d 377, 385 (Miss. 1992)).

II. Statutory Grounds for Termination
¶ 13. "Grounds for termination of parental rights shall be based on one or more of the [eight enumerated] factors" listed in Mississippi Code Annotated section 93-15-103(3) (Rev.2004). If a chancery, family, or county court is satisfied by clear and convincing evidence that grounds for termination exist, it may order termination of a parent's rights. Miss.Code Ann. § 93-15-109 (Rev.2004). See W.A.S., 949 So.2d at 35(¶ 11) (holding only one statutory ground has to be proven to justify termination).
¶ 14. Here, the chancery court found termination grounds existed based on the following factors in section 93-15-103(3):
(b) A parent has made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year; [and]
(f) When there is an extreme and deep-seated antipathy by the child toward the parent or when there is some other substantial erosion of the relationship between the parent and child which was caused at least in part by the parent's serious neglect, abuse, prolonged and unreasonable absence, unreasonable failure to visit or communicate, or prolonged imprisonment[.]
Miss.Code Ann. § 93-15-103(3)(b), (f).

A. No Contact for Over a Year
¶ 15. Relying on In re A.M.A., 986 So.2d 999, 1013-14 (¶¶ 32-33) (Miss.Ct. App.2007), KDG argues the chancery court erred in finding section 93-15-103(3)(b) applied. Because both children were over the age of three, DHS had to show by clear and convincing evidence KDG made no contact with his sons for over a year. Miss.Code Ann. §§ 93-15-103(3)(b), 93-15-109. KDG argues, because he saw RCG in July 2008 and called DHS in December 2008, this evidence defeats a "clear and convincing" finding of no contact.
¶ 16. Although DHS filed its petition to terminate in April 2009, the termination hearing was not held until November 18, 2009. See B.S.G. v. J.E.H., 958 So.2d 259, 270 (¶ 32) (Miss.Ct.App.2007) (calculating *752 year of no contact based on time of termination hearing).
¶ 17. The only evidence of contact was KDG's testimony that he called DHS in December 2008 and asked if it were possible to talk to his sons on the phone. Because of both sons' mental states and KDG II's placement at a treatment facility, DHS told KDG he could not just call his sons. To communicate with them he would have to schedule a visit. That was the entire point of the permanency order  for KDG to coordinate scheduled visits through DHS in order to be introduced back into his sons' lives. Yet KDG neither entered into a service agreement with DHS nor scheduled visitation with either son. The youth court did not deem KDG's testimony as credible evidence of contact. And we find no error in this conclusion.
¶ 18. We are cognizant of this court's decision in A.M.A., where the father was incarcerated the entire year prior to termination. A.M.A., 986 So.2d at 1013-14 (¶¶ 32-33). In that case, we found section 93-15-103(3)(b) could not be a ground for termination because the father had attempted several phone calls to DHS during his imprisonment and sent Christmas gifts to his daughters. Id. at 1014 (¶ 33). The controlling issue was whether the year-long absence was "solely attributable to [the father's] incarceration." Id. at 1013 (¶ 32) (emphasis added). We determined, had the father not been in jail for the entire year leading up to the termination, "he would have continued the care and support that he exhibited prior to incarceration." While we acknowledge KDG was in prison for six months prior to the termination hearing, we find KDG's case distinguishable from A.M.A. KDG's failure to contact his children was not solely attributable to his May 2009 incarceration. And unlike the father in A.M.A., there is no history of KDG's care and support of his minor children prior to his returning to prison.
¶ 19. KDG argues the date for determining the one year of no contact was the filing of the termination petition in April 2009. KDG further asserts he did make contact with RCG in July 2008, within a year prior. The contact KDG refers to is the three to five minutes he saw RCG during the paternity test. But we cannot disregard that KDG did not initiate the contact with his son. Rather, this contact was merely incidental to KDG's questioning whether he was RCG's biological father. As to KDG II, KDG provides no evidence he made contact with KDG II after 2007. Thus, even under the earlier time period of April 2008 to April 2009, we find the fact that KDG happened to see RCG briefly at the court-ordered paternity procedure insufficient to overcome the chancery court's finding section 93-15-103(3)(b) had been met.
¶ 20. Even if KDG's evidence were sufficient to defeat termination based on section 93-15-103(3)(b), the chancery court's use of this section to justify termination would not be reversible error. Termination requires only one statutory ground be proven. W.A.S., 949 So.2d at 35 (¶ 11). And we find section 93-15-103(3)(f) formed an independent basis for termination.

B. Substantial Erosion of the Father-Son Relationship
¶ 21. KDG argues there was no evidence, let alone clear and convincing evidence, to support the application of section 93-15-103(3)(f) because there was no testimony of antipathy by his sons toward him or erosion of his relationship with his sons.
¶ 22. "A finding of substantial erosion of the parent/child relationship necessarily involves a consideration of the relationship as it existed when the termination *753 proceedings were initiated." G.Q.A. v. Harrison County Dep't of Human Res., 771 So.2d 331, 338 (¶ 29) (Miss.2000). At the time DHS initiated termination, KDG II and RCG had been in foster care for almost six years. Cf. id. (finding grounds for termination of parental rights to a child who had been in foster care for seven years). KDG had been in prison for three of those years  and demonstrably absent and unsupportive during the years he was out. KDG himself testified that his sons did not know him. And his sons' foster parents, while acknowledging there was no antipathy by the sons toward KDG, testified about KDG's prolonged absence from his sons' lives. Based on this testimony, the chancery court found there was a substantial erosion of KDG's relationship with his sons caused by KDG's "prolonged and unreasonable absence, unreasonable failure to visit or communicate, or prolonged imprisonment constituting grounds for termination[.]"
¶ 23. KDG relies on four cases that have rejected termination of parental rights based on this ground. In re V.M.S., 938 So.2d at 834-37 (¶¶ 11-17); M.L.B. v. S.L.J., 806 So.2d 1023, 1026-29 (¶¶ 8-12) (Miss.2000); Petit v. Holifield, 443 So.2d 874, 877-79 (Miss.1984); and A.C.W. v. J.C.W., 957 So.2d 1042, 1045-46 (¶¶ 15-22) (Miss.Ct.App.2007).
¶ 24. Two of the cases, M.L.B. and Petit, are factually distinguishable from this case. Both involved divorced parents whose children were in the custody of one spouse, who wanted to terminate the rights of the former spouse so that his or her new spouse could adopt the children. M.L.B., 806 So.2d at 1023-24(¶ 2); Petit, 443 So.2d at 875. And in both cases, the Mississippi Supreme Court reversed termination because it "has never allowed termination of parental rights only because others may be better parents." M.L.B., 806 So.2d at 1029(¶ 11); Petit, 443 So.2d at 879.
¶ 25. V.M.S. and A.C.W. focused on whether the parents' actions caused the erosion of the parent-child relationship to the point where the relationship should be severed, determining in both cases their actions did not. V.M.S., 938 So.2d at 837 (¶ 17); A.C.W., 957 So.2d at 1046 (¶ 20). In V.M.S., the supreme court denied the mother visitation. But, despite not being able to see her daughter, she wrote to her twice a week and sent Christmas presents. V.M.S., 938 So.2d at 837 (¶ 17). Similarly, in A.C.W., the chancery court attributed the father's failure to see his daughter to the conflict between him and his ex-wife's family. A.C.W., 957 So.2d at 1044 (¶ 8). The fact the father never missed a child-support payment was further evidence he was willing to fulfill his role as a parent. Id. at 1044 (¶ 7).
¶ 26. Here, the eroded relationships were the result of KDG's actions. Unlike V.M.S., the youth court provided KDG the opportunity to act as a father to his sons through complying with the permanency order  an opportunity, the youth court found, he totally walked away from. The youth court weighed this along with the fact KDG had been out of jail for over a year and a half prior to the permanency order without making significant efforts to communicate with or support his sons. In adopting the youth court's findings, we find the chancery court did not err in finding clear and convincing evidence supported termination of parental rights on this ground.

III. Alternatives to Termination
¶ 27. Finally, KDG argues the youth court in its bench opinion "made no indication that it had considered alternative to terminating [KDG's] parental rights."
*754 ¶ 28. Mississippi Code Annotated section 93-15-103(4) (Rev.2004) does direct:
Legal custody and guardianship by persons other than the parent as well as other permanent alternatives which end the supervision by the Department of Human Services should be considered as alternatives to the termination of parental rights, and these alternatives should be selected when, in the best interest of the child, parental contacts are desirable and it is possible to secure such placement without termination of parental rights.
"However, the paramount concern in determining the proper disposition continues to be the best interest of the child, not reunification of the family." May v. Harrison County Dep't of Human Servs., 883 So.2d 74, 81 (¶ 22) (Miss.2004) (citing In re Beggiani, 519 So.2d 1208, 1213 (Miss. 1988)).
¶ 29. The youth court found termination was in the best interests of the children. In doing so, it considered KDG's incarceration and criminal history and his failure to comply with the permanency ordered, entered for his benefit to facilitate reentering his sons' lives. The chancery court, in adopting the youth court's finding, expressly stated termination would enable DHS to make a permanent and stable plan for each child's future and make them eligible for adoption.
¶ 30. We find the chancery court properly considered the best interests of the children when rejecting alternatives to termination. Therefore, we affirm.
¶ 31. THE JUDGMENT OF THE WINSTON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WINSTON COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ., CONCUR.
NOTES
[1] The parental rights of KDG II and RCG's mother was not at issue in this case.